UNITED STATES of America and Richard Kawabata, Revenue Agent, Internal Revenue Service, Petitioners-Appellees,

v.

Ralph W. SCHMIDT and Reeda Schmidt,
Respondents-Appellants.

No. 85–2337.

United States Court of Appeals,
Tenth Circuit.

April 27, 1987.

Francis M. Wikstrom (W. Mark Gavre, with him on the briefs) of Parsons, Behle &

Latimer, Salt Lake City, Utah, for respondents-appellants.

Robert S. Parish, Jr., Broomfield, Colo. (Roger M. Olsen, Acting Asst. Atty. Gen., Michael L. Paup, Charles E. Brookhart, Attys., Tax Div., Dept. of Justice, Washington, D.C., Brent D. Ward, U.S. Atty., Salt Lake City, Utah, with him on the brief), for petitioners-appellees.

Before BARRETT and TACHA, Circuit Judges, and BROWN, Senior District Judge *.

WESLEY E. BROWN, Senior District Judge.

Appellants Ralph W. and Reeda Schmidt appeal from a District Court order enforcing summonses issued by the Internal Revenue Service. 26 U.S.C. Secs. 7402(b) and 7604(a). We affirm the enforcement order of the District Court.

The facts are not in dispute. On July 3, 1984, the IRS issued administrative summonses to appellants, pursuant to 26 U.S.C. Sec. 7602 (1982). The summonses directed appellants to appear before Revenue Agent Richard Kawabata to testify and to produce for examination certain documents described in the summonses relating to their federal income tax liability for the tax years 1981 through 1983. Ralph Schmidt was the sole proprietor of a contractor business. In response to the summonses, appellants appeared with their counsel at the IRS office in Salt Lake City, Utah. Counsel stated to Kawabata that appellants did not bring and would not produce the requested documents.[1] Kawabata ter-

---

* Honorable Wesley E. Brown, United States Senior District Judge for the District of Kansas, sitting by designation.

1. The summonses required appellant to produce the following documents. ROA Vol. I at 1, Exh. B and D.

 All books, papers, records and other data in your possession or control reflecting the receipt of taxable income by you for the years 1981 through 1983; including but not limited to: employee earning statements for the years 1981 through 1983; records of deposits to bank accounts, cancelled checks, check registers and bank statements for the years 1981 through 1983; savings account passbooks including money market transactions for the

 years 1981 through 1983; and any and all books, records, documents regarding wages, salaries, tips, fees, commissions and any other compensation for services (including the receipt of property other than money), gains from dealings in property; interest, rental, royalty, dividend income; alimony, annuities, income from life insurance policies and endowment contracts, pensions, income from the discharge of indebtness (sic), distributive shares of partnerships gross income, and income from an estate of trust.

 All books and records, invoices, statements and other documents pertaining to operation of Ralph W. Schmidt Contractor Business for the period beginning January 1, 1981, and ending December 31, 1983, including but not

minated the interview without exchanging discussions with appellants.

On October 3, 1984, Kawabata served upon appellants two summonses, directing them to appear before him on October 22, 1984 with the documents described in the July 3, 1984 summonses. Appellants appeared with their counsel on October 30, 1984. Counsel reasserted the appellants' refusal to produce the documents requested by the summonses. Kawabata again terminated the proceeding without propounding any questions to appellants.

The IRS filed a petition on December 26, 1984, seeking judicial enforcement of the summonses pursuant to 26 U.S.C. Secs. 7402(b) and 7604(a). The petition was accompanied by a supporting declaration of Revenue Agent Richard Kawabata. He stated that he was a revenue agent who was conducting an investigation into the tax liability of the appellants for the tax years 1981 through 1983; that appropriate summonses were issued to and served upon the appellants which directed them to appear and to produce for examination certain documents; that appellants appeared but refused to comply with the request for production; that the documents summoned were not in the possession of the IRS; that the documents were necessary to determine the correctness of the appellants' tax liability; that all administrative steps required for issuance of the summons had been taken; and that the IRS at this time made no recommendation for criminal prosecution of appellants by the Department of Justice.

On January 3, 1985, the District Court ordered appellants to appear before a United States Magistrate to show cause why the summonses should not be enforced. At the enforcement hearing before Magistrate Calvin Gould, the Government called Kawabata whose testimony on direct and cross examinations was consistent with his Dec-

laration filed December 26, 1984. Appellants did not present any evidence or testimony. Counsel for appellants, however, moved for a dismissal of the petition for summons enforcement by asserting that the scope of the request for the summoned materials was too broad, that compelled compliance with the summonses issued to them would violate their Fifth Amendment protection against self-incrimination; and that the IRS violated its own rule because it failed to tender fees and mileage allowances to appellants for each of the summoned appearances.

The Magistrate issued a Report and Recommendation on April 29, 1985. The Report contained findings that the Government had made a prima facie case showing for the enforcement of the summonses and that appellants failed to establish a legally sufficient defense showing the impropriety of enforcement. While the Report discussed that the Fifth Amendment privilege against self-incrimination may apply to act of producing documents by compulsory process, it concluded that appellants "cannot assert a general claim of privilege, but are required to show that specific questions or production of specific documents presents a 'real danger' that they would be incriminated." The Report recommended that the summonses be enforced

> to the extent they require the respondents (-appellants) to appear and answer specific questions. If the answers to specific questions are privileged, the respondents (-appellants) might assert that privilege, but they are not entitled to a general claim of privilege.

On May 8, 1985, appellants filed their objections to the Magistrate's Report and Recommendation. Appellants made no challenges to the propriety of the factual findings set out in the Report. Appellants, however, reasserted the contentions for dismissal of the IRS's petition in a hearing

---

limited to all journals including general journal, cash receipts, and cash disbursements journals; general ledger and all subsidiary ledgers; savings account passbooks including money market transactions; bank statements, including cancelled checks and deposit slips; loans and notes ledgers and files; payroll

records; depreciation records and investment credit worksheets.

Workpapers prepared in connection with the preparation of the financial statements and tax returns for the years 1981 through 1983 in your possession, custody or control.

held before the District Court on August 5, 1985. Appellants contended that they had already complied with the summonses by appearing before Kawabata twice and answering—through their counsel—the question propounded to them each time by Kawabata. They also argued that they did not produce any of the summoned documents because the IRS had not shown that these documents were in existence and in their possession and control. Even if they had possession of the summonded documents, appellants further asserted that where the act of producing the documents would involve testimonial self-incrimination, it was privileged under the Fifth Amendment and therefore could not be compelled by a judicial process without a statutory grant of use immunity. Finally, they renewed their claim for reimbursement of fees and mileage for appearing pursuant to the summonses. After considering appellants' objections and contentions, the District Court sustained the findings set out in the Magistrate's Report and adopted the Report and Recommendation in its entirety. The District Court ordered that the summonses be enforced. This appeal followed.[2]

On appeal, appellants have repeated the contentions which they raised at each of the enforcement hearings before the Magistrate and the District Court. They assert that the enforcement order should be reversed because (1) they have complied with the summonses by appearing twice as required, (2) the Fifth Amendment protects them from producing any of the summoned documents where the act of production would result in testimonial self-incrimination, and (3) the IRS violated its own rule by refusing to pay them the necessary witness fees and mileage allowances.

We will consider the appellants' claim that the Fifth Amendment provides a blanket insulation from compulsory production of the documents requested by the summonses first. Appellants argue that under the principle established in *United States v. Doe*, 465 U.S. 605, 104 S.Ct. 1237, 79

L.Ed.2d 552 (1984), the act of producing the documents at issue is privileged.

In *Doe, supra*, a federal grand jury was investigating corruption in the awarding of county and municipal contracts. It served several subpoenas on the owner of several sole proprietorships demanding production of certain specific business records. The owner responded by filing motions to quash the subpoenas. The Supreme Court determined that since the preparation of the business records was done voluntarily by the owner in the normal course of business, the contents of the business records may not be privileged. *Doe, supra*, at 611–12, 104 S.Ct. at 1241–42. The Court, however, held that the act of producing the subpoenaed business records may be privileged if it involves a risk of "substantial and real" testimonial self-incrimination. *Id.*, at 613 and 615 n. 13, 104 S.Ct. at 1242 and 1243 n. 13. In explicating the testimonial aspects of the performance of the act and its incriminating effect, the Court reviewed its decision in *Fisher v. United States*, 425 U.S. 391, 96 S.Ct. 1569, 48 L.Ed.2d 39 (1976):

> Compliance with the subpoena tacitly concedes the existence of the papers demanded and their possession or control by taxpayer. It also would indicate the taxpayer's belief that the papers are those described in the subpoena. *Curcio v. United States*, 354 U.S. 118, 125 [77 S.Ct. 1145, 1150, 1 L.Ed.2d 1225 (1957). The elements of compulsion are clearly present, but the more difficult issues are whether the tacit averments of the taxpayer are both 'testimonial' and 'incriminating' for purposes of applying the Fifth Amendment. These questions perhaps do not lend themselves to categorical answers; their resolution may instead depend on the facts and circumstances of particular cases or classes thereof.

*Doe, supra*, at 613, 104 S.Ct. at 1242. The district court in *Doe* found that the act of producing the subpoenaed documents would involve testimonial self-incrimina-

---

**2.** Parties entered into a stipulation on September 16, 1985 to stay the enforcement order *pending this appeal.*

tion. The Supreme Court specifically sustained this factual finding, noting its approval of the district court's statements that

> enforcement of the subpoenas would compel (respondent) to admit that the records exist, that they are in his possession, and they are authentic. These communications, if made under compulsion of a court decree, would violate (respondent's) Fifth Amendment rights.

*Id.*, at 613 n. 11, 104 S.Ct. at 1242 n. 11.

 Thus, in order to invoke the constitutional protection under the Fifth Amendment that bars compelled self-incrimination, appellants must demonstrate that they have a "reasonable cause to apprehend danger" upon giving a responsive answer that "would support a conviction," or "would furnish a link in the chain of evidence needed to prosecute" them for a violation of the criminal statutes. *Hoffman v. United States*, 341 U.S. 479, 486, 71 S.Ct. 814, 818, 95 L.Ed. 1118, 1124 (1951). To satisfy this requirement, appellants must factually establish that the risks of incrimination resulting from their com-

pelled testimonial communications to be "substantial and 'real,' not merely trifling or imaginary, hazards of incrimination." *Marchetti v. United States*, 390 U.S. 39, 53, 88 S.Ct. 697, 705, 19 L.Ed.2d 889, 901 (1968). Appellants are "not exonerated from answering merely because (they) declare( ) that in so doing (they) would incriminate (themselves)—(their) say-so does not of itself establish the hazard of incrimination." *Hoffman, supra*, at 486, 71 S.Ct. at 818. Appellants have offered no evidence or sworn statements to justify their claim that "injurious disclosure could result" from a responsive production of the summoned documents. *Id.*, at 487, 71 S.Ct. at 818. They sought the protection of the Fifth Amendment under the "act of production" doctrine in *Doe, supra*, by asserting, through their counsel,[3] speculative and generalized allegations of self-incrimination that would establish a link in the chain of evidence for tax related criminal prosecution.[4]

 Appellants' generalized fear of criminal prosecution for a violation of the tax laws[5] is an insufficient basis for as-

---

**3.** We note that the record discloses that both appellants offered no sworn statements or testimony in asserting their Fifth Amendment privilege against self-incrimination in the enforcement proceedings before the Magistrate and the District Court. Indeed, their claim of Fifth Amendment privilege was invoked by appellants' counsel on their behalf. Because we conclude that the District Court properly ordered that the summonses be enforced, we reiterate the basic legal precept that the "Fifth Amendment is a *personal* privilege." *Couch v. United States*, 409 U.S. 322, 328, 93 S.Ct. 611, 616, 34 L.Ed.2d 548, 554 (1973) (emphasis in original). While "it can be asserted in any proceeding, civil or criminal, administrative or judicial, investigatory or adjudicatory," *Kastigar v. United States*, 406 U.S. 441, 444, 92 S.Ct. 1653, 1656, 32 L.Ed.2d 212, 217 (1972), this privilege against self-incrimination is limited to and can be invoked by "a person who shall be compelled in any criminal case to be a witness against *himself*." *Fisher v. United States*, 425 U.S. 391, 398, 96 S.Ct. 1569, 1574, 48 L.Ed.2d 39, 48 (1976) (quoting *Hale v. Henkel*, 201 U.S. 43, 69–70, 26 S.Ct. 370, 376–77, 50 L.Ed. 652, 663 (1906)). Only the appellants, not their counsel, are the proper parties to interpose a claim of privilege personal to themselves to prevent compelled disclosures that appellants "reasonably believe( ) could be used (against them) in a

criminal prosecution or could lead to other evidence that might be so used." *Kastigar, supra*, at 445, 92 S.Ct. at 1656.

**4.** The summonses in this case were issued pursuant to 26 U.S.C. Sec. 7602 (1982). Section 7602 was amended in 1982 by Sections 333(b) and (c) of the Tax Equity and Fiscal Responsibility Act of 1982, Pub.L. 97–248, 96 Stat. 324 (1982). By enacting Section 333(b) and (c), Congress intended to provide the IRS the authority to issue a summons, so long as the tax matter has not been referred to the Justice Department for criminal prosecution, "for the purpose of inquiring into any offense connected with the administration or enforcement of the Internal Revenue laws, even when the criminal investigation is the sole investigation." *See* Joint Committee on Taxation, Annual Expansion of the Revenue Provisions of the Tax Equity and Fiscal Responsibility Act, 97th Cong.2d Sess. at 234–236 (1982), *reprinted in* Internal Revenue Act, 1982, Text and Legislative History, at 1182–85 (West 1983).

**5.** Appellants' counsel pointed out that appellants could potentially be prosecuted under 26 U.S.C. Sec. 7201 (tax evasion) and Sec. 7206 (fraud or false statements in filing a tax return) if they produced the summoned documents. ROA III at 23–24.

serting a blanket claim of the Fifth Amendment privilege in refusing to produce any of the documents requested by the summonses. *See Borgeson v. United States,* 757 F.2d 1071, 1073 (10th Cir.1985) (per curiam). In order to validly raise the Fifth Amendment privilege, appellants must comply with the instructions of the summonses.[6] At the appropriate time, appellants may interpose their claim of Fifth Amendment privilege pertaining to specific documents and in response to individual questions upon their reasonable belief that a compulsory response by them to these testimonial matters will pose a substantial and real hazard of subjecting them to criminal liability. *Hoffman, supra,* 341 U.S. at 486, 71 S.Ct. at 818. At that time, the appropriate parties could then seek judicial determination on each claim of privilege with respect to the specific documents summoned and questions asked by the IRS. *United States v. Hodgson,* 492 F.2d 1175, 1177 (10th Cir.1974); *United States v. G & G Advertising Company,* 762 F.2d 632, 635 (8th Cir.1985).

■ Appellants do not dispute, and the record fully supports the District Court's findings that the Government has properly established its burden to obtain judicial enforcement of the summonses. The Government has shown that the summonses were issued in good faith, and that the information sought was not in the possession of the IRS and was relevant and material to a proper determination of the appellants' legal tax liability for the tax years 1981 through 1983. The mere fact that the investigation by a revenue agent on the correctness of appellants' tax liability during these years may uncover evidence that might be used against them in a later criminal prosecution will not support a blanket assertion of the Fifth Amendment privilege

against self-incrimination. *Cf. Clark v. C.I.R.,* 744 F.2d 1447 (10th Cir.1984) (per curiam) (We found that the taxpayer's claim of privilege against self-incrimination without supporting facts showing that a "real and substantial danger of incrimination" existed was "legally frivolous,"). The Fifth Amendment privilege was not intended by the framers of the Constitution and "may not be itself used as a method of evading payment of lawful taxes." *Edwards v. C.I.R.,* 680 F.2d 1268, 1270 (9th Cir.1982). Appellants failed to factually establish that a risk of substantial and real testimonial self-incrimination would occur as a result of the enforcement of the summonses properly issued by the IRS. Therefore, we hold that their claim of the Fifth Amendment privilege against self-incrimination was improper and will not bar the production of the summoned documents.

■ We need not delve into a lengthy discussion on each of the remaining issues on appeal. Appellants cannot complain that they were subject to duplicitous investigations when the necessary re-examination of their legal tax liability was brought upon them by their own recalcitrance and intransigence. The IRS has not completed its audit or investigation to determine the correctness of appellants' tax liability for the tax years 1981 through 1983 because appellants refused to comply with the instructions of the summonses. *See* 26 U.S.C. Sec. 7605(b), *see also United States v. Silvestain,* 668 F.2d 1161, 1163–64 (10th Cir.1982). We also reject the appellants' contention that the summonses should not be enforced because the IRS failed to tender witness fees and mileage costs to them for their two previous appearances before Revenue Agent Kawabata. Circuit courts have uniformly held that payment of witness fees and mileage costs, as autho-

---

6. Appellants contend that they could waive their Fifth Amendment privilege against self incrimination if they complied with the District Court's order enforcing the summonses. They cited *United States v. Trails End Motel, Inc.,* 657 F.2d 1169 (10th Cir.1981) (per curiam), for this proposition. Our decision in *Trails End Motel* did not involve a determination of an issue on waiver of appellants' Fifth Amendment privilege. We dismissed the appeal in *Trails End Motel*

because we found there was no case and controversy existed on appeal when the appellants complied with the district court's order by supplying the IRS the information it sought in the summonses. *Id.,* at 1170. We further stated that the appellants in that case "may adequately protect their asserted interest by challenging the IRS procedure if and when the government attempts to make further use of the information obtained by the summonses." *Id.*

rized by 26 U.S.C. Sec. 7610(a), is not a condition precedent to the proper enforcement of an IRS summons. *United States v. Money,* 744 F.2d 779, 780 (11th Cir.1984); *United States v. Miller,* 609 F.2d 336, 338 (8th Cir.1979); *see also United States v. Coson,* 515 F.2d 906, 907 (9th Cir.1975), *cert. denied,* 423 U.S. 927, 96 S.Ct. 272, 46 L.Ed.2d 253 (1975); *United States v. Awerkamp,* 497 F.2d 832, 836 (7th Cir.1974). The IRS is not denying that appellants are not entitled to proper reimbursement under 26 U.S.C. Sec. 7610(a). Indeed, the District Court ordered at the close of the enforcement hearing on August 5, 1985 that appellants' claim of entitlement to receive appropriate witness fees and expenses "be preserved." ROA Vol. II at 19.

AFFIRMED.