**Paul BIGBY, Petitioner,**

v.

**UNITED STATES IMMIGRATION AND NATURALIZATION SERVICE, Respondent.**

No. 93–2222.

United States Court of Appeals, Eleventh Circuit.

May 31, 1994.

---

David F. Vedder, Wells, Revis, Vedder & Elton, Daytona Beach, FL, for petitioner.

Donald A. Couvillon, R. Evans, Charles E. Pazar, Office of Immigration Litigation, Civil Div., Dept. of Justice, Washington, DC, for respondent.

\* Honorable W. Harold Albritton, III, U.S. District Judge for the Middle District of Alabama, sitting by designation.

Before ANDERSON and BIRCH, Circuit Judges, and ALBRITTON \*, District Judge.

ANDERSON, Circuit Judge:

Petitioner Paul Bigby appeals from a final order of deportation entered by the Board of Immigration Appeals (BIA). We find that Bigby's Fifth Amendment right against self-incrimination was properly asserted by his attorney under the circumstances, and therefore reverse the BIA's decision and remand the case for further proceedings.

Bigby, a native of Jamaica, was charged with deportability for entering the United States without inspection [1] and for being convicted of a crime relating to controlled substances.[2] A telephone hearing was held before an immigration judge, at which Bigby denied the allegations contained in the Order to Show Cause. The government was thus required to prove his deportability. The first step in the proof is establishing petitioner's alienage. The INS trial counsel attempted to do so by directly asking Bigby if he was a United States citizen. After the question was posed, Bigby's attorney asserted that the inquiry violated petitioner's Fifth Amendment right against self-incrimination. In objecting, counsel was clear that the invocation of the privilege was based on the fear that Bigby may place himself in danger of prosecution for criminal offenses that include alienage as an element. The immigration judge noted the objection but found that "the right of self-incrimination is not proper at this time." R. at 54–55. The INS attorney did not question the propriety of Bigby's attorney having invoked the privilege. Bigby then replied that he was not a U.S. citizen. The next question asked whether Bigby was a citizen of Jamaica; his attorney again asserted the Fifth Amendment privilege and again was overruled by the immigration judge. Petitioner replied that he was in fact a Jamaican national. R. at 56–57.

1. 8 U.S.C. § 1251(a)(1)(B).

2. 8 U.S.C. § 1251(a)(2)(B)(i).

At this point, the judge asked Bigby's counsel if he planned to raise similar objections to questions relating to the INS's next two allegations: that Bigby had entered the country at an unknown place on or about October 20, 1985, and that he entered the country in an unknown manner. Bigby's attorney replied that he would object, and the judge said that he would honor those objections. R. at 57. Thus the status of the hearing was that the INS had elicited proof (over a claim of privilege) that Bigby was an alien. Petitioner's testimony was the only evidence presented regarding alienage. Bigby's counsel moved to strike the allegedly compelled testimony and argued that, consequently, the proceeding was due to be dismissed because the government had failed to carry its burden of proving alienage. The motion was denied. Under 8 U.S.C. § 1361, a showing of alienage shifts the burden of proof to petitioner to show lawful entry into and presence in the United States. Bigby adduced no evidence in his behalf, and was found deportable. R. at 44.

Petitioner appealed his case to the BIA, arguing *inter alia* that his right to a fair hearing was denied because the proceeding before the immigration judge was conducted by telephone, rather than in the judge's physical presence; and that his Fifth Amendment right against self-incrimination was violated. The BIA recognized that the Ninth Circuit has held that a telephonic deportation hearing was not authorized under the Immigration and Nationality Act. *Purba v. INS*, 884 F.2d 516 (9th Cir.1989). The Board, however, noted that *Purba* was decided in another jurisdiction and found its reasoning unpersuasive. R. at 5. Regarding the Fifth Amendment claim, the BIA observed that the privilege was invoked by Bigby's attorney rather than by the petitioner himself. Because the right against self-incrimination is "personal," the Board found that Bigby's failure to assert the privilege himself resulted in its waiver. R. at 6. The BIA therefore confirmed Bigby's deportability, finding it unnecessary to address whether the concession of alienage was properly the subject of the Fifth Amendment privilege. *Id.* We have jurisdiction over appeals from final or-

ders of deportation pursuant to 8 U.S.C. § 1105a(a).

On appeal, the INS asserts that the BIA's holding on the Fifth Amendment issue was correct, arguing that the privilege against self-incrimination is properly invoked only by the witness, not his attorney. Bigby disagrees, maintaining that counsel's objection was proper and timely, was acknowledged (although overruled) by the immigration judge, and was not challenged by the INS attorney at the time it was made. Bigby also challenges the BIA's holding that the telephonic hearing was proper under the applicable statute.

## DISCUSSION

### A. Invocation of the Fifth Amendment Privilege

█ The INS argues that the Fifth Amendment privilege is personal and cannot be invoked by counsel. In this case, we need not rule on that general proposition. We assume *arguendo* that it is true as a general proposition. We decide only that, under the particular circumstances of this case, the invocation of the privilege was effective. The privilege in this case was clearly invoked, albeit by counsel rather than Bigby himself. The INS did not object to the privilege having been invoked by counsel. The immigration judge recognized that the privilege had been invoked and noted the objection, but overruled it and required Bigby to testify. We conclude that the only reasonable reading of this record is that all parties, counsel, and the court treated the privilege as having been invoked. Had an objection been made to invocation of the privilege by counsel, it is clear that Bigby would have personally raised the privilege. On these facts, we hold that the Fifth Amendment privilege was effectively invoked.

The argument of the INS is based on the proposition that the Fifth Amendment privilege against self-incrimination is personal to the witness. *See, e.g., Couch v. United States,* 409 U.S. 322, 328, 93 S.Ct. 611, 616, 34 L.Ed.2d 548 (1973). Although this is a well-recognized general rule, the principle is derived from cases fundamentally unlike the

present situation. For example, *Couch* held that no privilege existed against the production of documents held by the accountant of a taxpayer claiming the privilege. The Fifth Amendment prohibits compelling a witness to testify against himself, but does not bar the eliciting of incriminating statements from another. *See Johnson v. United States,* 228 U.S. 457, 458, 33 S.Ct. 572, 572, 57 L.Ed. 919 (1913). Because the government in *Couch* was not seeking information directly from the taxpayer, she could not invoke her Fifth Amendment right to prevent the production of documents in the possession of another. *Couch,* 409 U.S. at 328, 93 S.Ct. at 616. Thus the observation in *Couch* that the privilege is personal is not applicable to the instant situation.[3]

Likewise, our decision in *United States v. White,* 846 F.2d 678 (11th Cir.), *cert. denied,* 488 U.S. 984, 109 S.Ct. 538, 102 L.Ed.2d 568 (1988), relied on by the INS, addressed a fundamentally different situation. In *White,* several criminal defendants had earlier given civil depositions regarding events related to the criminal cases. The depositions were taken under a standard stipulation that most objections need not be made until the time of trial. The defendants challenged the admissibility of statements made in the depositions, claiming that they had not invoked their right against self-incrimination because it was understood that objections need not be raised during the deposition. We held that the defendants could not seek shelter under the Fifth Amendment, citing three significant facts: (1) a witness who testifies rather than invoking the Fifth Amendment generally waives the privilege; (2) the stipulation in the civil depositions was designed to allow evidentiary objections at the time of trial, which are not equivalent to assertions of privilege; (3) the defendants and their attorneys did assert their Fifth Amendment privileges at other times during the depositions, suggesting that they understood that the

stipulation did not protect their Fifth Amendment rights. *White,* 846 F.2d at 690. The INS argues that this case is like *White* because Petitioner relied on evidentiary objections to protect his assertion of privilege. We disagree. Bigby's counsel clearly was not just making evidentiary objections; he was invoking, on his client's behalf, the Fifth Amendment privilege against self-incrimination. The simple failure of Bigby himself to utter the words does not render his attorney's action a mere evidentiary objection. Neither did Bigby ever answer a contested question without first raising (through his attorney) his Fifth Amendment privilege, unlike the defendants in *White.* The INS can claim no support from that case.

The BIA noted that the District Court for the Southern District of Florida—the court with jurisdiction over the place of venue of Bigby's case—has held that the Fifth Amendment privilege must be invoked by the witness himself, rather than his attorney, when "the interrogating party stands on the requirement that the witness must personally invoke the privilege." *State ex rel. Butterworth v. Southland Corp.,* 684 F.Supp. 292, 294–95 (S.D.Fla.1988). We pass no judgment as to the correctness of *Southland,* because its holding applies to a situation significantly different than that in the instant case: when the questioning party insists that the witness personally invoke the privilege. At the time Bigby's attorney invoked the privilege, the INS's counsel did not object to the manner in which it was raised, nor did he insist that Bigby raise the privilege himself. The record is clear that both parties—and, significantly, the immigration judge—assumed that the privilege had been properly invoked.[4] Allowing an after-the-fact objection, at a time when a personal invocation is no longer possible, would raise serious fairness concerns.

Of the cases relied upon by the INS, only *United States v. Schmidt,* 816 F.2d 1477 (10th Cir.1987), provides arguable support to

---

3. *See also Watson v. Commissioner,* 690 F.2d 429 (5th Cir.1982); *United States v. Ayers,* 615 F.2d 658, 660 (5th Cir.1980) (both observing that the Fifth Amendment privilege is "personal" in that it may not be vicariously asserted or enjoyed by another).

4. Counsel for INS did contend, later in the hearing, that "an attorney cannot raise self-incrimination on behalf of his client." R. at 76. However, this occurred after the government had rested its case, and well after the time that the privilege was initially invoked and overruled, and Bigby was required to testify.

its position. *Schmidt* noted in dicta that "[o]nly the appellants, not their counsel, are the proper parties to interpose a claim of privilege personal to themselves to prevent compelled disclosure." *Id.* at 1481 n. 3. As noted above, we need not decide whether this is an accurate statement of the general rule. We merely hold that on the particular facts of this case—*i.e.*, when an attorney invokes the Fifth Amendment on his client's behalf, the questioning party does not contemporaneously challenge the manner in which the privilege was raised, and all present including the presiding judge assume the privilege has been invoked—the invocation of the privilege is effective.[5]

Thus, the cases relied upon by the INS provide no support for its attempt to retroactively challenge the effectiveness of an invocation of the privilege that was accepted at the time by all parties, counsel, and the court as having been effective. We hold that the privilege was effectively invoked. Accordingly, we vacate the judgment of the BIA and remand for further proceedings not inconsistent with this opinion.[6]

### B. Telephone Hearing Before the Immigration Judge

 Bigby maintains that holding the hearing over the telephone violated the applicable statute. The Immigration and Nationality Act provides that "[d]etermination of deportability in any case shall be made only on a record made in a proceeding before a special inquiry officer."[7] 8 U.S.C. § 1252(b). Petitioner claims that "before" means "in front of" and "in the presence of," mandating that the judge be physically present at the hearing. In support, Bigby cites *Purba v. INS*, 884 F.2d 516 (9th Cir.1989), in which

the Ninth Circuit adopted this construction of Section 1252(b). The *Purba* court found that the relevant dictionary definition of "before" supported the construction urged here by Bigby and disallowed telephonic deportation hearings. *Id.* at 517. We respectfully disagree with the Ninth Circuit's holding that "before," as used in Section 1252(b), has only one clear meaning. Another definition of "before" in the dictionary employed by the *Purba* court states that the word may mean "to be judged or acted on by," or "under the official or formal consideration of," as in "the case went [before] the court." *Webster's Third New International Dictionary Unabridged* 197 (1976). This definition, which unquestionably fits the context of the statute, has no implication of actual physical presence. The word "before" is used in a jurisdictional sense in other contexts; for example, 28 U.S.C. § 46(c) provides for rehearings "before" en banc courts of appeals. Although most en banc cases are decided after oral argument, there is no absolute requirement of argument upon rehearing. *See* 11th Cir. Internal Operating Procedure No. 5 for Fed.R.App.P. 35 (providing that a ballot for en banc rehearing will indicate whether the voting judge desires oral argument). We therefore find no clear congressional intent regarding the meaning of "before" in the statute.

In the absence of unambiguous congressional intent, we defer to an agency's reasonable interpretation of a statute it is charged with administering. *Chevron, U.S.A., Inc. v. Natural Resources Defense Council, Inc.*, 467 U.S. 837, 843, 104 S.Ct. 2778, 2781–82, 81 L.Ed.2d 694 (1984). Bigby claims there is no agency interpretation in the present case because no regulations regarding telephonic hearings have been adopted by the INS.

---

5. *See United States v. Johnson*, 752 F.2d 206, 211 n. 3 (6th Cir.1985) ("Although [the Fifth Amendment] privilege is personal to the client, it can be invoked on the client's behalf by the attorney.") (citations omitted).

6. The INS also argued, for the first time on oral argument, that Bigby had waived his Fifth Amendment privilege by testifying after the immigration judge denied counsel's objection rather than standing mute and refusing to answer. In light of the absence of briefing, we decline to address this issue. Moreover, under the circum-

stances of this case, we have considerable doubt concerning the validity of the government's argument. Bigby's counsel made it abundantly clear at the hearing that the privilege was being invoked and was not waived. *See* R. at 55 ("I certainly don't want there to be any misunderstanding that [Bigby] now is proceeding under compulsion and without waiver of any constitutional right.").

7. A special inquiry officer is the equivalent of an immigration judge. 8 C.F.R. § 1.1(1).

However, the telephone hearing was considered to be an appropriate procedure during administrative proceedings in the instant case; this itself is an agency interpretation entitled to deference. *See Martin v. Occupational Safety & Health Rev. Comm'n,* 499 U.S. 144, 156–57, 111 S.Ct. 1171, 1179, 113 L.Ed.2d 117 (1991). The INS does not argue for a broad rule that telephonic hearings are always proper. Rather, the Service contends—and we so hold—that when credibility determinations are not in issue,[8] an immigration judge may hold a hearing by telephonic means.

## CONCLUSION

We affirm the determination that the telephonic hearing was not held in violation of the applicable statute. We hold that the Fifth Amendment privilege was effectively invoked, and thus we vacate the judgment of the BIA and remand for further proceedings not inconsistent with this opinion.

AFFIRMED in part; REVERSED and REMANDED in part.

---

**8.** Bigby's challenge to the telephone hearing asserts a misapplication of a statute, not a violation of due process.