922 P.2d 1212

**Gilbert Lynn EVANS, Plaintiff–Appellee,**

v.

**STATE of New Mexico, TAXATION AND REVENUE DEPARTMENT, MOTOR VEHICLE DIVISION, Defendant–Appellant.**

No. 16645.

Court of Appeals of New Mexico.

June 21, 1996.

Certiorari Denied Aug. 15, 1996.

Tom Udall, Attorney General, Frank D. Katz, Special Assistant Attorney General, Taxation & Revenue Dep't, Santa Fe, for Appellant.

Andrea Lenway, Mayhill, for Appellee.

Ray Twohig, Albuquerque, for amicus curiae, N.M. Criminal Defense Lawyers Ass'n.

## OPINION

BOSSON, Judge.

1. We are presented with the following question: Under the Implied Consent Act may the Department of Motor Vehicles ("DMV" or "the Department") conduct license revocation hearings telephonically for DWI offenses without the physical presence of the hearing officer? We hold that the statute, NMSA 1978, Section 66–8–112(B) (Repl.Pamp.1994), does not authorize telephonic revocation hearings, and therefore under current law these hearings are required to be held in person.

### FACTUAL BACKGROUND

2. Defendant was arrested for driving under the influence of alcohol in Otero County. He submitted to a breath test under the Implied Consent Act. *See* NMSA 1978, §§ 66–8–105 to –112 (Repl.Pamp.1994). The results indicated that he had a blood-alcohol level of .14, well over the .08 limit provided by state law. *See* § 66–8–110(C); NMSA 1978, § 66–8–102(C) (Repl.Pamp.1994). Defendant was then served with a notice of license revocation pursuant to Section 66–8–111.1, and upon Defendant's request, a license revocation hearing was duly scheduled. *See* § 66–8–112. The hearing was conducted telephonically by a DMV hearing officer located in Santa Fe. Defendant, his attorney, and the arresting officer were all present in the DMV field office in Otero County. A speaker phone and a facsimile machine were

made available for use by the parties. Defendant objected to the telephonic hearing, arguing that the applicable statute, Section 66–8–112(B), requires the entire hearing to take place in the county where the DWI offense occurred. The hearing officer overruled the objection. Following the hearing, Defendant's driving privileges were revoked for ninety days. *See* § 66–8–111(C)(1). Defendant appealed to the district court for Otero County which reversed the hearing officer's decision, holding that the telephonic hearing violated Section 66–8–112(B). The district court also reinstated Defendant's driving privileges. The Department appeals.

*DISCUSSION*

3. Section 66–8–112(B) provides an administrative hearing for license revocation and states, in part, that "[t]he hearing shall be held in the county in which the offense for which the person was arrested took place." The Department argues that this is a mere venue statute for the convenience of the parties which the Department can satisfy by parties giving testimony locally over the telephone to a hearing officer located in Santa Fe. Defendant, on the other hand, maintains that when the legislature prescribes a "hearing" to be held "in the county in which the offense … took place," the legislature intends a hearing with the parties and the hearing officer in one place: "in the county" of the offense. Defendant has not raised a due process challenge to the Department's telephonic hearing. *See State ex rel. Human Servs. Dep't v. Gomez,* 99 N.M. 261, 268, 657 P.2d 117, 124 (1982) (Supreme Court adopting Wood, J., dissent). We assume, but do not decide, that the Department can conduct license revocation hearings over the telephone without violating constitutional requirements. The question before us here, however, is whether the legislature has authorized the Department to do so.

4. We observe that for over twenty-five years this statute, Section 66–8–112(B), and its antecedents have consistently required that driver license revocation hearings "shall

be held in the county" of the offense. 1978 N.M.Laws, ch. 35, § 520(B); 1971 N.M.Laws, ch. 68, § 6(B). Previously, to revoke a driver's license, the Department had to file a civil action in magistrate court in the county where the defendant resided. *See* 1969 N.M.Laws, ch 30, § 9(A). The Department acknowledges that until recently it uniformly conducted all revocation hearings in person and has conducted them telephonically for only the past three to four years.[1] In fact, most revocation hearings are still held in person; the Department uses telephonic hearings only for those less populated counties where, it argues, it would be a fiscal burden to do otherwise.

5. Without deciding whether other New Mexico agencies are authorized to conduct telephonic hearings, we find it instructive to review statutes governing hearings by other agencies. We are advised of only two other New Mexico agencies that conduct hearings telephonically: public assistance termination proceedings and unemployment compensation eligibility hearings. *See* NMSA 1978, § 27–3–3 (Repl.Pamp.1995) (public assistance fair hearings); NMSA 1978, § 51–1–8(D) (Cum.Supp.1995) (unemployment compensation hearings). *See generally* Jerome R. Corsi & Thomas L. Hurley, *Pilot Study Report on the Use of the Telephone in Administrative Fair Hearings,* 31 Admin.L.Rev. 485 (1979) (describing implementation of telephonic procedures); Jerome R. Corsi et al., *Major Findings of the New Mexico Experiment of Teleconferenced Administrative Fair Hearings,* 38 U.Miami L.Rev. 647 (1984) (discussing positive outcome of field test). *But see* Neil Fox, *Telephonic Hearings in Welfare Appeals: How Much Process is Due?,* 1984 U.Ill.L.Rev. 445, 472–75 (discussing problems found in study of telephonic hearings).

6. Although neither statute specifically authorizes telephonic hearings, both statutes delegate hearing procedure to administrative regulation which indicates a specific grant of administrative autonomy not found in the

---

1. The Department has not issued a formal regulation either authorizing telephonic hearings or establishing procedures for them. Although it might have been advisable to precede the use of telephonic hearings with a duly promulgated administrative regulation, that omission is not significant to our holding in this opinion.

Implied Consent Act. Significantly, neither statute requires a hearing to be held in a particular locale as with DMV revocation proceedings. In contrast, other administrative hearing statutes, like the DMV license revocation statute, do require that a "hearing shall be held in the county," either of residence or where a particular act took place. *See* NMSA 1978, § 52–5–6(A) (Repl. Pamp.1991) (workers' compensation) ("Hearings shall be held in the county in which the injury ... occur[s]."); NMSA 1978, § 60–6C–2 (Repl.Pamp.1994) (liquor license revocation proceeding) ("[H]earings ... shall be held in the county in which the licensed premises ... are located."); NMSA 1978, § 61–1–6 (Repl.Pamp.1993) (Uniform Licensing Act) ("Board hearings ... shall be conducted in the county in which [the licensee resides], or at the election of the board [where] the act or acts complained of occurred."); NMSA 1978, § 40–4B–6(B) (Repl. Pamp.1994) (child support hearings) ("Hearings shall be held in the judicial district in which the claim [arises] or ... the part[y] resides.").

7. These statutes share certain elements in common with the statute providing for DMV license revocation proceedings. First, of course, there is the similarity of language requiring a hearing to be held in a certain place. Second, we note that in each instance the hearings can have serious consequences to the parties involved, whether it be receipt of workers' compensation or child support, revocation of a professional or commercial license, or loss of permission to drive a motor vehicle. Third, credibility is often an issue in these hearings, whether the credibility of the accused or of the accuser.

8. In DMV license revocation proceedings, the credibility of the police officer and the driver is not infrequently at issue. By statute, the hearing officer shall decide, in part: "whether the law enforcement officer had reasonable grounds to believe that the person had been driving a motor vehicle within this state while under the influence of intoxicating liquor." Section 66–8–112(E)(1). Resolving whether the law enforcement officer had "reasonable grounds" to stop the motorist and then had "reasonable grounds" to test the motorist for impairment can be intensely factual determinations in which credibility may become the determining factor. *See, e.g., Apodaca v. State, Taxation & Revenue Dep't,* 118 N.M. 624, 626, 884 P.2d 515, 517 (Ct.App.) (arresting officer's safety concerns constituted reasonable grounds for stop), *cert. denied,* 118 N.M. 585, 883 P.2d 1282 (1994). Additional factual issues may easily arise, including whether the driver declined to submit to a breath or blood test, whether the officer advised the motorist of the consequences of refusal, whether an initially recalcitrant driver recanted, or whether his change of mind was timely. *See generally State v. Suazo,* 117 N.M. 785, 793, 877 P.2d 1088, 1096 (1994) (adopting rule for retracting refusal to take blood-alcohol test); *Fugere v. State, Taxation & Revenue Dep't,* 120 N.M. 29, 34, 897 P.2d 216, 221 (Ct.App.) (determining whether driver's actions constituted a refusal to take a breath test is a factual question), *cert. denied,* 119 N.M. 771, 895 P.2d 671 (1995).

9. Traditionally, our legal system has depended upon personal contact between the fact finder and the witness to allow the fact finder to observe the demeanor of the witness as a means of assessing credibility. A long line of New Mexico cases reserves the determination of witness credibility to the fact finder, in this case the hearing officer. *See, e.g., Tallman v. ABF (Arkansas Best Freight),* 108 N.M. 124, 127, 767 P.2d 363, 366 (Ct.App.) ("An appellate court does not observe the demeanor of live witnesses, cannot see a shift of the eyes ... or take notice of other signs that may mean the difference between truth and falsehood to the fact finder."), *cert. denied,* 109 N.M. 33, 781 P.2d 305 (1988); *Newman v. Basin Motor Co.,* 98 N.M. 39, 43, 644 P.2d 553, 557 (Ct.App.1982) (citing "the venerable rule" that the credibility and weight of the testimony rests solely with the trial court, not the appellate court). In license revocation proceedings, the initial hearing with the Department hearing officer provides the driver his or her only opportunity to have a fact finder make this credibility assessment.

10. Existing case law confirms the importance of in-person hearings when critical

credibility determinations are at stake. In *Gomez*, our Supreme Court held that the Department of Human Services did not violate due process by using telephonic hearings in disability termination proceedings. 99 N.M. at 262, 657 P.2d at 118. However, the Court noted that hearings of this nature frequently relied on documentary medical evidence with witness credibility being only "a minimal factor." *Id.* at 268, 657 P.2d at 124. Similarly, in *Bigby v. United States I.N.S.*, 21 F.3d 1059 (11th Cir.1994), a deportation case cited by the Department, the federal court permitted deportation hearings to be conducted telephonically but limited its holding as follows: "[W]e ... hold—that when credibility determinations are not in issue, an immigration judge may hold a hearing by telephonic means." *Id.* at 1064 (footnote omitted); *cf. Purba v. I.N.S.*, 884 F.2d 516, 517 (9th Cir.1989) (when statute requires hearing to be held "before" the hearing officer, deportation proceeding may not be conducted telephonically); *In re Gust*, 345 N.W.2d 42, 45 (N.D.1984) ("Above all, in testimony by telephone the trier of facts is put in a difficult, if not impossible, position to take into account the demeanor of the witness in determining the witness' credibility."); *Aqua Marine Prods., Inc. v. Pathe Computer Control Sys. Corp.*, 229 N.J.Super. 264, 551 A.2d 195, 200 (App.Div.1988) (with telephone testimony, fact finder has no basis for evaluating credibility). *But see Babcock v. Employment Div.*, 72 Or.App. 486, 696 P.2d 19, 20–21 (1985) (telephonic hearing satisfied statutory requirement for a fair hearing).

11. Other jurisdictions have also interpreted the statutory language "in the county" to require in-person hearings rather than telephonic hearings. In *Sleeth v. Illinois Department of Public Aid*, 125 Ill.App.3d 847, 81 Ill.Dec. 117, 120–21, 466 N.E.2d 703, 706–07 (1984) (citing Ill.Rev.Stat. ch. 23, para. 11–8.2 (1983)), the appellate court interpreted the phrase " '[t]he appeal shall be heard in the county where the appellant resides' " to mean the place where both plaintiff and the hearing officer were located. The court concluded that telephone hearings with the plaintiff in a field office and the hearing officer in Chicago did not comply with statutory requirements. *Id.; accord Padlo v. Illinois Dep't of Pub. Aid*, 131 Ill. App.3d 430, 86 Ill.Dec. 689, 691, 475 N.E.2d 1068, 1070 (1985). In *Detroit Base Coalition for Human Rights of the Handicapped v. Department of Social Services*, 431 Mich. 172, 428 N.W.2d 335, 338 (1988) (en banc) (quoting from the rules promulgated by the DSS), the Michigan Supreme Court interpreted an administrative rule providing for a hearing " 'in the county where a claimant resides.' " The Court invalidated telephonic hearings, holding that the rule "contemplates a hearing at which the plaintiffs are present at the place where the decisionmaker is observing, considering, and evaluating the evidence." *Id.* at 340.

12. Further it may not be just the credibility of the parties that is at stake in these hearings. " '[J]ustice should not only be done, but should manifestly and undoubtedly be seen to be done.' " *High Ridge Hinkle Joint Venture v. City of Albuquerque*, 119 N.M. 29, 40, 888 P.2d 475, 486 (Ct.App.) (quoting *Liteky v. United States*, 510 U.S. 540, 564–66, 114 S.Ct. 1147, 1162, 127 L.Ed.2d 474 (1994) (Kennedy, J., concurring) (internal quotations omitted)), *certs. denied*, 119 N.M. 20, 888 P.2d 466 (1994); *see also Gray Panthers v. Schweiker*, 652 F.2d 146, 161 (D.C.Cir.1980) (one societal goal served by an in-person hearing is the necessity for a decisionmaking procedure which is perceived as "fair" by the citizens). In license revocation proceedings, the presence of the hearing officer may be necessary for the participants to have a sense of fair play—that the Department has fairly considered the evidence, regardless of whether they agree with the result.

13. We read the language in Section 66–8–112(B) in a manner most consistent with how courts of other jurisdictions have interpreted similar language, particularly when credibility issues are at stake. This interpretation is also consistent with how the Department conducted revocation hearings for the better part of the past quarter century. We are not persuaded by the Department's argument that as long as one party is in the relevant county, statutory requirements have been met.

14. Accordingly, in the absence of clear legislative intent to the contrary, we will read the language, a "hearing shall be held in the county," to mean an in-person hearing held in one place in the relevant county. This is not to say that the legislature could not authorize telephonic hearings; our Supreme Court has made that clear in *Gomez,* 99 N.M. at 262, 657 P.2d at 118. Nonetheless, we assume the legislature would proceed cautiously in any effort to change requirements in those proceedings where credibility is at issue.

■ 15. Finally, we note the very real concerns of the Department regarding the potential fiscal impact of this opinion. We do not mean to minimize the importance of those concerns. The Department turned to telephonic hearings to conserve funds and in good faith spent money on equipment and personnel training. We would hope there would be ways to enable qualified persons in outlying DMV offices to conduct in-person hearings in a manner both cost-effective and sensitive to legislative intent. Also, a licensee may consent to a telephonic hearing. Absent legislative authority, we cannot ratify a procedure, however well-intentioned, that risks sacrificing accuracy for the sake of cost-effectiveness, particularly when residents of only certain rural counties are asked to bear that risk. The Department is, of course, free to take up the matter again with the legislature.

*CONCLUSION*

■ 16. We agree with the district court's interpretation of the Implied Consent Act to require license revocation hearings to be held in person. We do not agree, however, with the action of the district court reinstating Defendant's driving privileges. The Department should be given an opportunity to conduct a proper hearing pursuant to the Implied Consent Act as clarified in this opinion. Therefore, we reverse and remand for that purpose.

17. IT IS SO ORDERED.

DONNELLY and HARTZ, JJ., concur.