**IN THE COURT OF APPEALS OF THE STATE OF NEW MEXICO**

**CENLAR, FSB,**

Plaintiff-Appellee,

v.                                                    **NO. 26,768**

**ROGER MOORE,**

Defendant-Appellant,

and

**NEW MEXICO EDUCATIONAL ASSISTANCE FOUNDATION, STATE OF NEW MEXICO DEPARTMENT OF LABOR EMPLOYMENT SECURITY DIVISION, CAROL KELLY, UNITED STATES OF AMERICA, BY AND THROUGH THE INTERNAL REVENUE SERVICE, STATE OF NEW MEXICO TAXATION AND REVENUE DEPARTMENT, THE UNKNOWN SPOUSE OF ROGER MOORE, IF ANY,**

Defendants.

**APPEAL FROM THE DISTRICT COURT OF BERNALILLO COUNTY**
**Clay Campbell, District Judge**

Little & Dranttel, P.C.
Elizabeth Dranttel
Albuquerque, NM

for Appellee

Law Offices of Thomas M. Brown
Thomas M. Brown
Albuquerque, NM

for Appellant

Law Office of Roger Moore
Roger Moore
Albuquerque, NM

Pro Se Appellant

## MEMORANDUM OPINION

**FRY, Chief Judge.**

Defendant Roger Moore appeals the district court's orders entering a judgment of foreclosure against him and denying his counterclaims. On appeal Defendant initially challenged the finality of the orders. He also objected to the district court's rulings on telephonic testimony, alleged discovery violations, contempt, attorney fees, and evidentiary matters. We remanded this case to the district court to enter findings and conclusions on the counterclaims. In his supplemental brief, Defendant raises numerous objections to the sufficiency of the evidence. After due consideration of all issues raised in the briefs, we affirm.

**BACKGROUND**

Plaintiff filed a complaint for foreclosure on May 30, 2001. Defendant answered the complaint and raised counterclaims. Defendant's affirmative defenses and counterclaims primarily centered on Defendant's allegations that he regularly requested an accounting from Plaintiff, but that Plaintiff failed to provide one. Plaintiff's claims were tried before the district court and, in a decision letter, the district court found for Plaintiff and rejected Defendant's affirmative defenses. The district court then entered a foreclosure judgment and order of sale that included findings and conclusions. Prior to trial on the counterclaims, the district court dismissed two of Defendant's counterclaims. Defendant's remaining counterclaims were that Plaintiff (1) charged excessive fees, (2) failed to provide a requested accounting, (3) breached the mortgage agreement, and (4) violated the New Mexico Unfair Practices Act. Defendant also sought injunctive relief by requesting the court to order an accounting. After trial on the counterclaims, the district court rejected all of Defendant's counterclaims. The district court requested proposed findings and conclusions on the counterclaims, which both parties filed. A hearing to determine the remaining issue of attorney fees and costs was set for August 14, 2006. The district court entered a final judgment on Defendant's counterclaims on April 11,

3

2006, which did not include findings and conclusions. Before the scheduled hearing on attorney fees, Defendant filed for bankruptcy and a hearing never took place. Defendant appealed, raising numerous challenges.

In his brief in chief, Defendant argued that this case was not final because the foreclosure judgment did not use decretal language and issues concerning attorney fees remained unresolved. Although we were not persuaded that the case was not final based on pending issues of attorney fees, we remanded this case to the district court for entry of findings and conclusions on the counterclaims. On remand, the district court heard arguments on attorney fees and entered findings and conclusions on both the counterclaims and attorney fees. The parties filed supplemental briefs, with Defendant raising numerous challenges to the district court's findings and conclusions.

Further facts will be presented as necessary.

**DISCUSSION**

**A.    Finality**

Defendant argued in his brief in chief that the dispositive issue on appeal is the finality of the foreclosure judgement and order of sale upon the dismissal of Defendant's counterclaims. Defendant challenged finality on grounds that the

4

foreclosure judgment and order of sale (1) lacks decretal language, and (2) does not resolve all issues concerning attorney fees. Defendant's supplemental brief does not mention whether he continues to challenge finality after the remand. We nonetheless conclude that the foreclosure judgment is final.

As to Defendant's first point, our courts have often recognized in mortgage foreclosure cases that a decree adjudicating the mortgagor's indebtedness is final and appealable, notwithstanding the necessity for further proceedings to enforce the judgment and supervise the sale of the mortgaged property. *See Speckner v. Riebold*, 86 N.M. 275, 277, 523 P.2d 10, 12 (1974). Despite Defendant's argument that the order lacked decretal language, the foreclosure order clearly determined the rights of the parties to the sale proceeds and thus was a final appealable order. *See Waisner v. Jones*, 103 N.M. 749, 751, 713 P.2d 565, 567 (Ct. App. 1986).

As to Defendant's second challenge, Defendant argued in his brief in chief that this matter is not final because the district court did not issue a final ruling on attorney fees. Defendant also challenged the court's findings on attorney fees as not final. Now that the district court has issued a final ruling on attorney fees on remand, Defendant's arguments concerning finality are no longer at issue. To the extent that

Defendant challenged the sufficiency of the evidence to support the district court's rulings on attorney fees, we address those arguments below.

**B.      Telephonic Testimony**

Defendant argues that the district court erred in allowing one of Plaintiff's witnesses, Nancy Anne Jones, to testify telephonically over his objections at trial. Defendant contends that our case law and rules of civil procedure do not specifically provide the district court with authority to allow telephonic testimony at trial and that the error in allowing the testimony was substantial and prejudicial.

Jones is a senior vice president in charge of loan administration at Market Street Mortgage, which serviced Defendant's mortgage before it was transferred to Plaintiff. Plaintiff sought Jones's testimony at trial to help establish the history of the loan and to show that the records upon which Plaintiff relied were maintained in the ordinary course of business. Plaintiff filed an affidavit concerning the scope of Jones's testimony a year before trial and subpoenaed her to testify a month before trial. However, two weeks prior to trial, Jones filed a motion to quash. At a hearing on the motion, Jones's attorney challenged the district court's power to compel Jones, who resided in Florida and was not a party, to testify. Jones requested permission to testify telephonically. Plaintiff told the district court that it had served the subpoena as a

formality because it was under the impression until right before trial that Jones was a cooperating witness who agreed to appear at trial to testify. Plaintiff argued that it was appropriate for the court to allow Jones to testify telephonically because her affidavit had been on file for more than one year, she was listed as a witness, and Defendant had not found it necessary to depose her. Defendant objected, arguing that there were no extenuating circumstances and that Jones's telephonic testimony would prejudice him because it might affect the court's ability to assess Jones's demeanor or determine whether she was being coached. The district court noted that it ordinarily would not permit a witness to testify telephonically. However, the court decided to allow it in this instance because the affidavit indicated that Jones was an important but minor witness and that the scope of her testimony was narrow.

Defendant argues that our rules of civil procedure do not specifically permit allowing a trial witness to testify telephonically. *See* Rule 1-043(A) NMRA (providing that "[i]n all trials the testimony of witnesses shall be taken orally in open court unless otherwise provided by these or other rules"). However, Defendant does not point us to any authority that expressly prohibits telephonic trial testimony in New Mexico in circumstances similar to this.

7

Defendant bases his objections to the district court's decision to allow Jones to testify telephonically on a criminal case, *State v. Almanza*, 2007-NMCA-073, 141 N.M. 751, 160 P.3d 932. In criminal proceedings, use of telephonic testimony is most problematic because a criminal defendant has a constitutional right to confront the witnesses testifying against him or her. *See id.* ¶¶ 6-7. Thus, we have recognized that "any exceptions to the general rule providing for face-to-face confrontation are narrowly tailored to include only those situations where the exception is necessary to further an important public policy." *Id.* ¶ 8 (internal quotation marks and citations omitted). Because this is not a criminal case and because the constitutional right to confront witnesses is not at stake, we do not think *Almanza* controls our inquiry.

Beyond the criminal context, our cases have recognized the importance of personal contact between the fact finder and the witness "when critical credibility determinations are at stake." *Evans v. State, Taxation & Revenue Dep't*, 1996-NMCA-080, ¶¶ 9-10, 122 N.M. 216, 922 P.2d 1212. However, unless expressly prohibited by rules or statute, our courts have not adopted a per se rule prohibiting the use of telephonic testimony at trial in civil proceedings. We therefore review the district court's decision for abuse of discretion. *See State ex rel. Children, Youth, & Families Dep't v. Anne McD.*, 2000-NMCA-020, ¶ 15, 128 N.M. 618, 995 P.2d 1060.

In *Anne McD.*, this Court recognized several important functions that are served by requiring the personal appearance of a witness. *Id.* ¶ 21. Even though *Anne McD.* involved an express provision in the Children's Code that allowed telephonic testimony, *id.* ¶ 16, in the absence of a rule prohibiting it, we believe consideration of the functions is relevant to our analysis of whether the district court abused its discretion in allowing telephonic testimony in this instance.

The six important functions served by requiring a person to testify in person in court include that a personal appearance

> 1. assists the trier of fact in evaluating the witness' credibility by allowing his or her demeanor to be observed first-hand;
>
> 2. helps establish the identity of the witness;
>
> 3. impresses upon the witness, the seriousness of the occasion;
>
> 4. assures that the witness is not being coached or influenced during testimony;
>
> 5. assures that the witness is not referring to documents improperly; and
>
> 6. in cases where required, provides for the right of confrontation of witnesses.

*Id.* ¶ 21 (setting forth functions articulated in *Bonamarte v. Bonamarte*, 866 P.2d 1132, 1134 (Mont. 1994)).

9

Applying the functions discussed in *Anne McD.*, we cannot conclude that allowing Jones to testify telephonically resulted in any prejudice to Defendant. Defendant made no objection at trial to challenge Jones's credibility or identity, nor any suggestion that she was being coached or referring to documents improperly. The record does not reflect that Jones doubted the seriousness of the occasion. Defendant was not deprived of the opportunity to cross-examine Jones or challenge her testimony. On appeal, Defendant does not argue that the telephonic testimony prevented the district court from making credibility determinations or assessing whether Jones was improperly coached or influenced. Instead, Defendant argues that the district court's error in allowing the testimony was substantial because Jones's testimony was used to establish the payment history, the accuracy of the debt, and the balance of mortgage upon transfer to Plaintiff.

While we do not condone the practice of allowing telephonic testimony without the consent of the parties, we are unable to conclude that the district court abused its discretion by allowing it in this instance. Jones was a records custodian whose testimony was limited to establishing the foundation for documents that were admitted into evidence. In this limited situation, in which special circumstances dictated the necessity, critical credibility determinations were not at stake, and there is no

indication that the witness was referring to documents improperly, we find no reversible error.

**C.     Discovery**

Defendant argues that the district court erred by denying his motion to dismiss Plaintiff's complaint due to discovery abuse.  Defendant contends that Plaintiff failed to comply with a stipulated order filed on January 7, 2004.  Defendant contends that, contrary to Plaintiff's representations that all requested discovery was produced, the entire loan file was not produced.  Defendant claims that Plaintiff's failure to produce the entire loan file prevented Defendant from full discovery of all materials relating to the mortgage loan file, which in turn prevented Defendant from asserting his defenses and counterclaim.

Initially, we note that Defendant filed his motion to dismiss on February 2, 2006, after the trial on Plaintiff's complaint.  The district court summarily denied the motion before the trial on the counterclaim on grounds that the motion was untimely. The court noted that the motion should have been raised prior to trial or at trial as exhibits were being introduced.  The court also noted that it had already ruled on some of the objections in the motion.

On appeal, Defendant claims that he did not discover that Plaintiff failed to produce the entire loan file until the third day of trial on the complaint. Defendant claims that his motion to dismiss was timely filed when it came to his attention that contrary to Plaintiff's assertions that it had produced the entire loan file, Plaintiff had additional documentation, an escrow analysis summary.

We are not persuaded that Defendant demonstrated that Plaintiff lied in discovery or that Plaintiff withheld documentation that precluded Defendant from the full discovery of documents relating to the mortgage loan file. Plaintiff argued that the escrow analysis summary at issue was a computer file that was not kept by the foreclosure department and thus was not part of Defendant's loan file. Plaintiff argued that it properly provided Defendant all documents in discovery. In addition, in its letter decision after trial, the district court found Defendant's contention that he never received escrow analyses from Plaintiff was not credible. Thus, the district court properly denied the motion to dismiss. *See Littell v. Allstate Ins. Co.*, 2008-NMCA-012, ¶ 13, 143 N.M. 506, 177 P.3d 1080 (filed 2007) (explaining that the appellate court defers to the fact finder's determination regarding the credibility of witnesses).

**D.    Contempt**

Defendant argues that the district court's decision to find him in contempt and award attorney fees, as set forth in the order filed on January 24, 2006, was not supported by the evidence. Defendant claims that, although he made attempts, he was unable to comply with the district court's orders requiring him to deposit funds in the court registry. Defendant contends that his inability to comply was not willful or deliberate.

We review the finding of civil contempt to determine whether there is sufficient evidence of (1) knowledge of the court's order, (2) an ability to comply, and (3) willful noncompliance with the order. *See Dial v. Dial*, 103 N.M. 133, 136, 703 P.2d 910, 913 (Ct. App. 1985). Our review of the record indicates that Defendant had a long history of failing to respond to the district court's orders requiring him to deposit money in the court registry without demonstrating that he was unable to comply. On September 28, 2004, Plaintiff filed a motion requesting the district court to order Defendant to deposit all mortgage payments that were past due into the court registry, as Defendant had not made a mortgage payment since November 1, 2000. At a hearing on December 13, 2004, the district court ordered Defendant to deposit $23,250.53 in the court registry within ninety days. On March 16, 2005, after the

ninety days had passed, Defendant asked for an extension of sixty days so that he could secure the necessary funds to comply with the order. The parties stipulated to extend Defendant's deadline to May 13, 2005. When Defendant failed to deposit the funds in the court registry and did not respond to a letter from Plaintiff's counsel inquiring about Defendant's non-compliance, Plaintiff filed a motion to compel Defendant to deposit the money into the court registry and for sanctions for not complying with the stipulated order. In his response, Defendant argued that there was no basis for sanctions. Defendant argued that prior to the stipulated order, he told Plaintiff he was in the process of identifying revenue owed as attorney fees on judgments and would commit any attorney fees toward payment of the lump sum payment due. Defendant claimed that he had made a good faith effort to comply with the court's order requiring the lump sum deposit, which was supported by his request for an extension and attempts to make the payment. Defendant argued that there was no showing of a willful violation as required to impose sanctions under Rule 1-037 NMRA.

The district court granted the motion for sanctions due to Defendant's failure to deposit the $23,250.23 into the court registry as required by the order. The court awarded Plaintiff reasonable attorney fees and costs for its efforts in seeking

Defendant's compliance with the order. The court required Defendant to comply with the order by allowing Defendant to make three installments no later than December 12, 2005. The court noted it would consider more severe sanctions if Defendant failed to comply.

On December 16, 2005, Plaintiff filed a motion to dismiss Defendant's counterclaim as a sanction based on Defendant's continuing failure to comply with the court's orders about deposits into the court registry. Defendant responded by filing a motion for an extension on December 22, 2005. Defendant claimed that the required funds existed but that he was unable to comply with the December 12 deadline in the latest order. The district court treated Plaintiff's motion as an order to show cause and, after a hearing, granted the request for sanctions based on Defendant's willful noncompliance with three separate orders. Four days later, Defendant filed a motion for reconsideration, claiming that he now had funds to deposit. The court granted the motion and allowed Defendant to deposit the funds, but the court found Defendant in contempt for his failure to comply with the orders requiring Defendant to deposit money into the court registry. The court awarded Plaintiff attorney fees and costs for its efforts to obtain Defendant's compliance.

Under these circumstances, we are not persuaded that the district court erred in holding Defendant in contempt and awarding attorney fees to Plaintiff. *See Dial* 103 N.M. at 137, 703 P.2d at 914 (recognizing that attorney fees for prosecuting a contempt proceeding can be awarded to an aggrieved party as a civil contempt fee). Sufficient evidence exists to support the district court's conclusion that Defendant willfully failed to comply with the court's orders. Despite Defendant's arguments that inability to pay is a defense in a contempt proceeding, Defendant was still required to prove his inability to pay. *See id.* at 137-38, 703 P.2d at 914-15. We are not persuaded that Defendant demonstrated that he was financially unable to comply with the court's orders or that he had made good faith efforts to secure the funds. Instead, Defendant repeatedly promised to make the required deposits but then either ignored the applicable order's deadlines or asked for an extension after the deadline had passed claiming that he had access to funds and would pay the required amount if given more time. In his last motion for an extension, Defendant once again claimed that the funds necessary for compliance existed but that he just needed more time. Given Defendant's repeated representations over the course of a year that he had access to funds based on several possible sources (his attorney fees from different cases) and his failure to act diligently in requesting extensions based on a clearly

stated inability to pay, we reject Defendant's assertion that the district court erred in finding him in contempt and awarding attorney fees.

**E.      Motions in Limine**

Defendant contends that the district court erred in denying his motions in limine, which sought (1) to prohibit Plaintiff's witnesses from referencing or introducing certain documents containing accounting codes at trial and (2) to limit the scope of the trial testimony of Henry C. South. Defendant contends that Plaintiff's failure to provide him with accounting codes as requested in discovery unfairly prejudiced him at trial.

In the two motions, Defendant sought to prevent South from producing or testifying about accounting codes relating to debits and credits on Plaintiff's mortgage because those codes had not been produced during discovery. Plaintiff responded that the motions should be denied because they were untimely according to the scheduling order and because the accounting codes discussed by South in his deposition were not related to Defendant's discovery requests. Plaintiff argued that the codes could not have been produced in response to Defendant's discovery requests because they were not part of his mortgage loan file. Plaintiff argued that the accounting codes were internal referencing codes used by Plaintiff's account representatives to input

17

information and read account histories. Plaintiff argued that South obtained the accounting codes in preparation for his testimony as an expert witness by contacting Plaintiff and requesting clarification on the coding and application of payments. Thus, Plaintiff provided the codes as a tool to assist South in understanding the payment histories. Plaintiff asserted that Defendant had the payment history in his possession for review since 2002 and that if he had a question about the codes, he could have requested clarification.

The admission or exclusion of evidence is reviewed for abuse of discretion. *Coates v. Wal-Mart Stores, Inc.*, 1999-NMSC-013, ¶ 36, 127 N.M. 47, 976 P.2d 999. Here, we cannot conclude that the district court abused its discretion. The district court not only found that the motions were untimely but that Defendant had not demonstrated that the codes were part of the loan file and should have been produced in discovery.

**F.    Sufficiency**

In his brief in chief and supplemental brief, Defendant raises numerous challenges to the sufficiency of the evidence to support the district court's findings with respect to the rulings on the complaint and the counterclaims. Defendant then

challenges the district court's conclusions on grounds that they are not supported by the evidence.

In reviewing a sufficiency of the evidence claim, we view the evidence in the light most favorable to the prevailing party and disregard evidence and inferences to the contrary. *Weidler v. Big J Enters., Inc.*, 1998-NMCA-021, ¶ 30, 124 N.M. 591, 953 P.2d 1089 (filed 1997). We defer to the fact finder's determination regarding the credibility of witnesses and the reconciliation of inconsistent or contradictory evidence. *Id.* "We simply review the evidence to determine whether there is evidence that a reasonable mind would find adequate to support a conclusion." *Id.*

Defendant's claims of error can be organized into two areas. We first address Defendant's challenges to the district court's findings and conclusions concerning Defendant's claims that he did not receive an accounting or the codes necessary to understand his loan file. We then address Defendant's challenges to the district court's findings and conclusions on attorney fees.

**1.      Affirmative Defenses and Counterclaims**

Defendant's objections to the sufficiency of the evidence on the counterclaims primarily concern his contention that he regularly requested an accounting from Plaintiff but that Plaintiff failed to provide Defendant with an accounting, escrow

analysis, or the informational equivalent. Defendant's allegations about the requested accounting were also central to Defendant's affirmative defenses, which were rejected because Defendant failed to prove them at the trial on the complaint. Our review of the record persuades us that Defendant's challenges should be rejected on appeal.

We first address the following challenges to the district court's findings, which we have summarized to avoid repetition. Defendant claims that there was no definitive testimony from Plaintiff's witnesses that Defendant had received an accounting, escrow analysis, or its equivalent. Defendant argues that the district court erred in finding that Defendant failed to demonstrate that he regularly requested accountings but never received them. Defendant objects to findings that his testimony was not credible, while the testimony of Plaintiff's witnesses was credible. Defendant also complains that he was not provided a complete loan history because he was not given necessary transactions codes. Finally, Defendant objects to the district court's findings on the duty to provide the information contained in an accounting.

We believe that sufficient evidence supports the challenged findings that Defendant received an accounting or escrow analysis. Jones, the senior vice president of Market Street Mortgage, and Rosemary Leanardis, Plaintiff's senior vice president, testified that it was their companies' usual practice to provide an escrow analysis to

the borrower on a yearly basis. Leanardis testified that Plaintiff sent an escrow analysis to borrowers once a year with the coupon booklet. Leanardis also testified that Plaintiff sent an escrow analysis to Defendant before the loan went into foreclosure. This testimony supports an inference that Defendant received escrow analyses from both companies. In addition, Defendant made some payments with the coupon booklets. Thus, the district court was entitled to infer that Defendant received the escrow analyses sent with the coupon booklets. Accordingly, we conclude that substantial evidence supports the district court's finding that Defendant received escrow analyses.

Defendant also failed to present any evidence to support his claims that his repeated requests for an accounting or escrow analysis went unanswered. The district court noted that it did not find Defendant's testimony credible that he regularly requested accountings because there was no documentation of those requests. Jones and Leondaris both testified that they did not have any documentation in their records that Defendant made regular requests for an accounting. The district court found that Defendant made only one documented request for an accounting and that Plaintiff responded by mailing a payment history on July 9, 2001. Plaintiff does not dispute

21

this finding. We therefore conclude that sufficient evidence supports the district court's findings that Defendant did not meet his evidentiary burden.

Although Defendant challenges the district court's findings that Plaintiff's witnesses were credible, we defer to the fact finder's determination regarding the credibility of witnesses. *Littell*, 2008-NMCA-012, ¶ 13. We are not persuaded that the testimony of Leanardis should be disregarded because she did not work in the pre-foreclosure department. Leanardis testified that she was familiar with her employer's documents and practices and procedures as well as with Defendant's account history and thus could testify about any documented contact between Plaintiff and Defendant.

In addition, we are not persuaded that the district court's credibility determinations were undermined by Defendant's claim that he was not provided with the codes he needed to understand the history of his loan. Defendant claims that Leanardis testified that the loan history provided to Defendant was not complete because the necessary transaction codes were not provided. Defendant also relies on his failure to receive the transaction codes as his basis for objecting to the district court's finding that Defendant had the information that would have been contained in any accounting.

As we discussed above with respect to the denial of Defendant's motions in limine, Defendant had the payment history in his possession for review since 2002. Thus, if he had a question about the codes, he could have requested clarification. However, nothing in the record indicates that Defendant requested the codes or asked for clarification. Defendant does not convince us that his failure to receive the codes casts doubt on the district court's finding that he was not credible. When it comes to evaluating the credibility of witnesses, we defer to the fact finder. *Id.*

Moreover, Plaintiff argued below that the transaction codes were used as a tool to understand the loan history. In addition to finding that Defendant received annual escrow analyses based on the testimony of Jones and Leanardis, the district court effectively found that Defendant understood the loan history when it found that Defendant received an account activity statement and knew the amount of late fees being charged, the dates payments were due, when Plaintiff claimed to have received payments, the terms of the loan documents he signed, the amounts listed on the payment coupons, and the contents of annual tax documents. The district court further found that Defendant had access to his own bank statements, cancelled checks, and mail and telephone records. Despite Defendant's assertions that he needed the codes,

sufficient evidence supports the district court's finding that Defendant had information available for understanding his account activity statement.

We now turn to Defendant's challenge to the district court's finding that while Plaintiff has an implied duty to provide the information contained in an accounting upon request, such duty cannot be implied to be a condition precedent to making timely mortgage payments. Defendant presents no legal argument on this point. Where a party cites no authority to support an argument, we may assume no such authority exists. *In re Adoption of Doe*, 100 N.M. 764, 765, 676 P.2d 1329, 1330 (1984). Thus, we have no basis for concluding that Defendant was entitled to refuse to make his loan payments based on Plaintiff's failure to provide him with a satisfactory accounting. Moreover, as discussed above, the evidence does not show that Defendant made a proper request for an accounting or that he was not provided with the necessary information.

Because we see no merit in Defendant's challenges to the sufficiency of the evidence to support the district court's findings, we conclude that the district court properly found that Defendant failed to prove his affirmative defenses and counterclaims. Defendant's only challenge to the district court's conclusions of law on the counterclaims is based on his contention that they are not supported by the

24

evidence. Not persuaded by Defendant's sufficiency arguments, we affirm the rejection of the affirmative defenses and the denial of the counterclaims.

**2.      Attorney Fees**

In his brief in chief, Defendant challenged the district court's findings and conclusions with respect to attorney fees on grounds that they were not supported by substantial evidence and that the court had not made a final ruling on the issue. Now that the district court has issued final findings and conclusions, we address Defendant's specific challenges to the court's ruling on attorney fees raised in Defendant's supplemental brief. Our review is guided by the standard that an "[a]ward of attorney fees rests in the discretion of the [district] court and this [C]ourt will not alter the fee award absent an abuse of discretion." *Lenz v. Chalamidas*, 113 N.M. 17, 18, 821 P.2d 355, 356 (1991).

Defendant first challenges the district court's findings on attorney fees by arguing that (1) the district court's finding that Plaintiff filed three affidavits (on January 31, 2006, February 3, 2006, and March 28, 2006) did not reflect an affidavit filed on October 31, 2005; (2) Plaintiff's affidavits do not reflect a payment by Defendant of $2,538.52; (3) the affidavits do not distinguish between time spent on

25

the collection of the note and mortgage and Defendant's counterclaims; and (4) the itemized costs are not specific enough.

The October 31, 2005, affidavit was filed after the district court awarded Plaintiff reasonable attorney fees and costs for Plaintiff's efforts in seeking Defendant's compliance with the court's order requiring Defendant to deposit funds in the court registry. The court ordered Defendant to pay Plaintiff $2,538.52 in fees and costs, which Defendant paid on January 23, 2006. Although Defendant's payment of $2,538.52 was not reflected in the other affidavits, Plaintiff acknowledges that it received the payment and applied it to the total outstanding amount due on underlying litigation. Accordingly, Defendant has not demonstrated that it matters that the three affidavits failed to refer to the 2005 affidavit or account for the $2,538.52 payment.

Turning to Defendant's contention that the affidavits do not distinguish between the time spent on Plaintiff's collection efforts and Defendant's counterclaims, we are not persuaded that the court erred. In this case, the district court awarded attorney fees based on the parties' contract. *See State ex rel. Nichols v. Safeco Ins. Co.*, 100 N.M. 440, 447, 671 P.2d 1151, 1158 (Ct. App. 1983) ("In asserting a claim for attorney's fees under an action in contract, the court may properly require a lessor to distinguish

26

between the amount of attorney's fees incurred for prosecution of the complaint and counsel fees for defense of a counterclaim."). The district court's findings on the counterclaim indicate that the court recognized that the mortgage contemplated an award of attorney fees only as part of the costs and expenses of foreclosure. Thus, the court found that the contractual provisions for attorney fees did not apply to Plaintiff as the prevailing party on Defendant's counterclaims. Accordingly, the court did not allow fees and costs incurred from January 31, 2006, to March 14, 2006, as they were incurred in defense of Defendant's counterclaims. Because the court did not allow attorney fees and costs for the time spent on the counterclaim, we reject Defendant's contention that Plaintiff should have also distinguished between time spent on its collection efforts and time spent on defense of the counterclaims even earlier in the case. We note that the district court did not require Plaintiff to make a distinction in its affidavits, perhaps in recognition that the issues concerning Defendant's affirmative defenses and his counterclaims were so intertwined that it would have been very difficult to accomplish such a task. We further are not persuaded that Plaintiff's list of costs is somehow invalid because it lacks such details as the specific defendant associated with each cost, the precise items copied, and the topic of each conference call. The district court based its decision as to the actual amount due and

the reasonableness of the fees and costs on testimony and evidence produced throughout the proceedings, including affidavits submitted by Plaintiff and argument at the hearing on November 7, 2008. Because the district court's finding is supported by the evidence, we reject Defendant's contention that the district court erred by not requiring greater detail in the cost list.

Defendant next challenges the district court's findings that Plaintiff's attorney fees and costs were reasonable. Defendant contends that the court's conclusion that fees of $88,692.69 and costs of $3,816.88 should be awarded is not supported by the evidence.

Contrary to Defendant's assertion, we are not persuaded that the district court erred in determining that the fees and costs were reasonable. The district court based its decision on Plaintiff's affidavits, Defendant's statements of attorney fees, and the parties' arguments at the November 7, 2008, hearing. Despite Defendant's objection on appeal that there was no evidentiary hearing on the local legal market or counsel's experience and expertise, it appears that these issues were discussed by Plaintiff's counsel at the November 7 hearing. Defendant did not challenge Plaintiff's representations and made no arguments regarding comparable fees or billing practices in the Albuquerque legal market. We also note that Defendant does not challenge the

28

district court's finding that the time and labor required were reasonable in light of the protracted nature of the litigation, which the court ascribed to Defendant's actions.

To the extent that Defendant protests that the district court abused its discretion by simply adopting the Plaintiff's affidavits wholesale, we are not persuaded. The district court recognized that the operative question is not what an attorney bills his or her client but what is reasonable and necessary. *See Lenz*, 113 N.M. at 19, 821 P.2d at 357 (recognizing that the district court should not just rely on time spent in determining reasonable attorney fees but should determine the time reasonably necessary in a particular case). The court specifically noted that it was not adopting the affidavits "ipso facto" but was looking at the charges in light of all of the evidence to see whether the total amount was reasonable and necessary. We find Defendant's challenge to the reasonableness of Plaintiff's attorney fees particularly weak in light of the amount of attorney fees claimed by Defendant. As the district court found, Defendant claimed fees totaling $85,603.89 as of March 3, 2006, which was before the trial on the counterclaims. Despite Defendant's assertions that the evidence was insufficient, Defendant does not point us to any evidence that would support his position. For example, Defendant claims that he prevailed on various aspects of litigation, but he does not support this claim with any further detail. *See Martinez v.*

29

*Sw. Landfills, Inc.*, 115 N.M. 181, 186, 848 P.2d 1108, 1113 (Ct. App. 1993) (recognizing that this Court will not consider a challenge to the sufficiency of the evidence when an appellant fails to "include the substance of all the evidence bearing upon a proposition"). We therefore affirm the district court's conclusion that fees and costs are reasonable and necessary to the litigation and should be awarded.

**G.      Plaintiff's Request for Attorney Fees on Appeal**

Plaintiff requests an award of attorney fees for its services on appeal. The party prevailing shall recover costs on appeal. *See* Rule 12-403(A) NMRA. The recoverable costs include reasonable attorney fees when permitted by law. *See* Rule 12-403(B)(3). Our courts have held that a contractual provision to award attorney fees will include appellate costs. *See Edwards v. Mesch*, 107 N.M. 704, 707, 763 P.2d 1169, 1172 (1988). The district court found that the mortgage contemplated an award of attorney fees as part of the costs and expenses of foreclosure. We therefore award attorney fees as part of the costs and expenses of foreclosure on appeal. We remand this matter to the district court solely to determine reasonable attorney fees for Plaintiff on appeal.

**CONCLUSION**

We affirm.

**IT IS SO ORDERED.**

_____
**CYNTHIA A. FRY, Chief Judge**

**WE CONCUR:**

_____
**JAMES J. WECHSLER, Judge**

_____
**CELIA FOY CASTILLO, Judge**

31