# IN THE COURT OF APPEALS OF THE STATE OF NEW MEXICO

Opinion Number: 2023-NMCA-049

Filing Date: April 24, 2023

No. A-1-CA-39468

ANGEL MARTINEZ,

       Petitioner-Appellant,

v.

NEW MEXICO TAXATION & REVENUE
DEPARTMENT, MOTOR VEHICLE
DIVISION,

       Respondent-Appellee.

APPEAL FROM THE DISTRICT COURT OF RIO ARRIBA COUNTY
Jason Lidyard, District Court Judge

Ben A. Ortega
Albuquerque, NM

for Appellant

Raúl Torrez, Attorney General
Regina Ryanczak, Special Assistant Attorney General
Santa Fe, NM

for Appellee

## OPINION

**MEDINA, Judge.**

**{1}**    Petitioner Angel Martinez appeals the administrative hearing officer's (AHO) decision to sustain the revocation of her license under the Implied Consent Act, NMSA 1978, §§ 66-8-105 to -112 (1978, as amended through 2019). Petitioner's appeal raises an issue of first impression—the conflict between our State's COVID-19 closure and Petitioner's statutory right to an in-person license revocation hearing. Petitioner argues: (1) the March 23, 2020 nonessential business closure did not apply to the Administrative Hearing Office (the Office); (2) even if the nonessential business closure applied, the Office could have conducted in-person hearings following the mass-

gathering restrictions in the March 23, 2020 order, rather than closing, and the AHO here acted as an advocate by ordering a telephonic hearing over Petitioner's objection; (3) the AHO improperly relied on our Supreme Court's court closure order to justify a telephonic hearing because the Office is part of the executive branch, not the judicial branch; and (4) conducting a telephonic hearing was not authorized and prevented the AHO from making a proper credibility determination at the hearing. For the reasons explained below, we affirm.

**BACKGROUND**

**{2}** Following Petitioner's refusal to submit to a chemical test to determine her blood alcohol level, she was issued a driving while intoxicated (DWI) citation and a notice of license revocation on February 22, 2020. The notice of revocation informed Petitioner that her license would be revoked in twenty days and that she may contest the revocation by providing a written request for a hearing within ten days. Following Petitioner's request for a hearing, the Office informed Petitioner by letter that the AHO intended to conduct her hearing remotely through a telephonic conference call on April 23, 2020, at 10:00 a.m. The notice also stated that if Petitioner did not consent to a telephonic hearing, she must file an objection within ten days of receiving the notice. Petitioner timely objected to a telephonic hearing and demanded that the hearing be held in person.

**{3}** Before any hearing occurred, Governor Michelle Lujan Grisham (the Governor) issued an executive order on March 11, 2020, stating a public health emergency existed in New Mexico due to the spread of COVID-19. *See* Executive Order 2020-004 (N.M. Mar. 11, 2020). In her executive order, the Governor invoked her powers under the All Hazard Emergency Management Act, NMSA 1978, §§ 12-10-1 to -10 (1959, as amended through 2007), and declared a public health emergency under the Public Health Emergency Response Act (PHERA), NMSA 1978, §§ 12-10A-1 to -19 (2003, as amended through 2015). *See* Executive Order 2020-004 at 2. Executive Order 2020-004 was in effect at the time of Petitioner's April 23, 2020 license revocation hearing, and was extended multiple times in order to combat the COVID-19 public health emergency. *See* Executive Order 2020-022 at 3 (N.M. Apr. 6, 2020) (extending the public health emergency until April 30, 2020); *Grisham v. Reeb*, 2021-NMSC-006, ¶ 2, 480 P.3d 852 (discussing multiple extensions of the public health emergency).

**{4}** As authorized by the Governor's executive order, the New Mexico Department of Health issued a series of emergency public health orders. The first, issued on March 12, 2020, declared the COVID-19 outbreak a condition of public health importance and restricted mass gatherings, as well as advised New Mexicans to stay home and avoid unnecessary exposure to COVID-19. *See* Dep't of Health, Public Health Order at 2-3 (N.M. Mar. 12, 2020) (First PHEO). A subsequent order on March 23, 2020, prohibited all mass gatherings and required all nonessential businesses to reduce their in-person workforce "at each business or business location by 100 [percent]." Dep't of Health, Public Health Order at 4 (N.M. Mar. 23, 2020) (Second PHEO). The Second PHEO also authorized all State departments and agencies "to take all appropriate steps to ensure

compliance with [the Second PHEO]" and stated, "All public and private employers are required to comply." Second PHEO at 5. The restrictions from the Second PHEO were extended through Petitioner's license revocation hearing. *See* Dep't of Health, Public Health Order at 1 (N.M Apr. 30, 2020) (stating that the Second PHEO remained in effect).

**{5}**     To comply with the Second PHEO, the chief hearing officer at the Office issued an amended standing order, pursuant to 22.600.1.9 NMAC on March 25, 2020. *See* Amended Standing Order #20-01 of the Chief Hearing Officer (Mar. 25, 2020) (Standing Order). The Standing Order required all license revocation hearings that were previously scheduled to "be converted to remote telephonic hearing[s]," regardless of whether "any previous objection to a remote hearing [had been] made before the emergency order." Standing Order at 2-3. The Standing Order clarified that the "current state of emergency and th[e] [S]tanding [O]rder supersede any previous demands for an in-person hearing or objections to a remote telephonic hearing made before the issuance of the Governor's Emergency Decr[ee] and this order." Standing Order at 3.

**{6}**     In compliance with Executive Order 2020-004, the First and Second PHEO, and the Standing Order, the AHO overruled Petitioner's objection to the telephonic revocation hearing, and the hearing proceeded telephonically on April 23, 2020. Counsel for Petitioner appeared at the telephonic hearing, and Officer Rodriguez, the officer who conducted the traffic stop, was the only witness. Officer Rodriguez testified that he initiated the traffic stop because Petitioner was traveling at a high rate of speed, and his radar equipment stated Petitioner was traveling 47 miles-per-hour in a 35 mile-per-hour zone. During the stop, he noticed Petitioner had bloodshot, watery eyes and detected the odor of alcohol. After Petitioner admitted drinking, Officer Rodriguez requested that Petitioner get out of her vehicle. Officer Rodriguez again detected the odor of alcohol coming from Petitioner's facial area.

**{7}**     Officer Rodriguez conducted standardized field sobriety tests and observed multiple indicators of impairment. Concluding that Petitioner was intoxicated, Officer Rodriguez arrested Petitioner for DWI. He then read the Implied Consent Act breath advisory to Petitioner. Petitioner refused to submit to a chemical test twice, even after Officer Rodriguez informed Petitioner that she could lose her driving privileges if she did not submit to the chemical testing. Officer Rodriguez then served Petitioner with a citation for DWI and a notice of revocation.

**{8}**     At the telephonic hearing, Petitioner's counsel cross-examined Officer Rodriguez, made objections, and argued that Officer Rodriguez lacked reasonable suspicion to conduct the initial traffic stop and probable cause to arrest Petitioner. Unpersuaded, the AHO found: (1) "Officer Rodriguez had reasonable grounds to believe [Petitioner] was driving . . . under the influence"; (2) "Officer Rodriguez lawfully arrested [Petitioner]"; (3) "the hearing was held no later than [ninety] days from the [n]otice of [r]evocation"; and (4) "[Petitioner] refused to submit to a chemical test even after being advised that failure to submit could result in revocation of driving privileges." *See* § 66-8-112(F) (listing the required findings at a license revocation hearing). The AHO additionally determined that

the telephonic hearing did not "deprive [Petitioner] of due process or prejudice [Petitioner] in any way." The AHO accordingly sustained the license revocation for one year.

{9}	Petitioner appealed the order to the district court. Petitioner argued that the AHO exceeded her authority because no statute, regulation, or published order permitted holding a telephonic hearing over Petitioner's objection, and therefore the decision to hold a telephonic hearing usurped the authority of the judicial and legislative branches. Petitioner asserted that the revocation hearing must take place in-person and can only be telephonic if the driver consents, (citing Section 66-8-112(B), 22.600.6.10(C) NMAC), and this Court's decision in *Evans v. New Mexico Taxation and Revenue Department*, 1996-NMCA-080, 122 N.M. 216, 922 P.2d 1212. Finally, Petitioner argued that she was denied a fair and impartial hearing because the AHO acted as an advocate by sua sponte requiring a telephonic hearing. Although Petitioner challenged the lawfulness of the AHO's decision to require a telephonic hearing, Petitioner did not challenge the AHO's factual findings when sustaining the license revocation.

{10}	The district court certified the appeal to this Court as a matter of great public importance, pursuant to NMSA 1978, Section 39-3-1.1(F) (1999) and Rule 1-074(S) NMRA.

**DISCUSSION**

{11}	Petitioner's appeal presents an issue of first impression, requiring that we determine the interaction between the State's interest in mandating public health orders and a petitioner's statutory rights at a license revocation hearing. We first address Petitioner's argument that the Second PHEO did not authorize the Office's closure and hold that the nonessential business closure applied to State departments and agencies, including the Office. We then discuss whether the Office could have conducted in-person hearings under the mass-gathering restrictions and hold that the Office was required to close in compliance with the Second PHEO. Next, we address Petitioner's argument that the AHO here improperly relied on Supreme Court Order No. 20-8500-002 and Order No. 20-8500-006 to justify the telephonic hearing and hold that she did not. Finally, we address Petitioner's argument that the telephonic hearing was improper and find this argument unpersuasive. *See* Order, *In re Precautionary Measures for Court Operations* No. 20-8500-002 (N.M. Mar. 23, 2020) (Supreme Court Order No. 20-8500-002) (N.M. Mar. 17, 2020) and Order, *In re Additional Precautionary Measures for Court Operations* No. 20-8500-006 (N.M. Mar. 23, 2020) (Supreme Court Order No. 20-8500-006)

{12}	In reviewing an administrative agency's decision, "reviewing courts are limited to determining whether the administrative agency acted fraudulently, arbitrarily or capriciously; whether the agency's decision is supported by substantial evidence; or whether the agency acted in accordance with the law." *Paule v. Santa Fe Cnty. Bd. of Cnty. Comm'rs*, 2005-NMSC-021, ¶ 26, 138 N.M. 82, 117 P.3d 240; *see* § 39-3-1.1(D); Rule 1-074(R) NMRA. When applying this standard of review, we will not substitute our

judgment for that of the hearing officer on factual matters, but we will review questions of law de novo. *See Rio Grande Chapter of the Sierra Club v. N.M. Mining Comm'n*, 2003-NMSC-005, ¶ 17, 133 N.M. 97, 61 P.3d 806.

## I.       The Public Health Emergency Orders Applied to the Office

**{13}**    We turn first to Petitioner's contention that the Governor's executive order and the Second PHEO did not sanction the hearing officer's decision to hold a telephonic hearing over her objection. According to Petitioner, the Office does not fall under the definition of "nonessential business," and therefore the office closure requirement in the Second PHEO did not apply to the Office. Although Petitioner challenges whether the Second PHEO applies to the Office, Petitioner does not challenge the constitutionality of the order or dispute that the Office is part of the executive branch of government. *See* NMSA 1978, § 7-1B-2 (2015) (stating that the Office "is created and is administratively attached pursuant to the provisions of [NMSA 1978, Section 9-1-7 (1977)] to the department of finance and administration").

**{14}**    We start by reviewing the Department of Health's language in the Second PHEO. The Second PHEO defines "[e]ssential business" as "a business or non[]profit entity falling within one or more" categories of a specifically defined list. Second PHEO at 2. Under the PHEO, this definition "shall have the meaning given to [it], except where the context clearly requires otherwise." Second PHEO at 2. The list of essential businesses includes healthcare, infrastructure, utilities, and other services necessary for New Mexico citizens' continued health and safety. Second PHEO at 2-4 (listing of essential categories). The Second PHEO does not define "nonessential business," instead stating that "[a]ll businesses except those entities identified as 'essential businesses' are hereby directed to reduce the in-person workforce at each business or business location by 100 [percent]," and clarifying this meant "the closure of physical office spaces, retail spaces, or other public spaces of a business." Second PHEO at 4. This closure extended to all "public and private employers" that were "required to comply with this Order." Second PHEO at 5.

**{15}**    The Department of Health applied the closure requirement to State entities as well. The Second PHEO states,

> The New Mexico Department of Public Safety, the New Mexico Department of Homeland Security and Emergency Management, the Department of the Environment, and all other State departments and agencies are authorized to take all appropriate steps to ensure compliance with this [o]rder.

Second PHEO at 5. The Order concludes that it "shall remain in effect for the duration of Executive Order 2020-004." Second PHEO at 5.

**{16}**    Reviewing the language of the Second PHEO, we hold that the Second PHEO's nonessential business closure applied to State departments and agencies, including the

Office. Although the definition of "essential business" includes the terms "business" and "non-profit entity" for the listed categories, the Second PHEO clarifies that it applies to the State. The Second PHEO closure applied to "all *public* and private employers" and "*all other State departments and agencies* are authorized to take all appropriate steps to ensure compliance with this Order." Second PHEO at 5 (emphases added).

{17} The First PHEO supports our conclusion and clarifies any remaining confusion. The First PHEO defines "business" as "organizations, governmental organizations, political subdivisions, or other entities engaged in commercial, industrial, or professional activities." First PHEO at 2. The order also states that it "shall remain in effect for the duration of Executive Order 2020-004." First PHEO at 3. While the Second PHEO supersedes previous orders, it only does so when "previous orders, proclamations, or directives [are] in conflict," which is not the case here. Second PHEO at 5. The First PHEO's definition of "[b]usiness," in combination with the Second PHEO's directive to construe definitions broadly if context so requires, indicates that the Second PHEO was intended to encompass State departments and agencies when ordering the nonessential business closure.

{18} Because we hold that State departments and agencies fall under the definition of business for the nonessential business closure, we must next determine whether the Office falls into one of the essential business categories. We hold that it did not. Upon review, only one category of "essential business" could apply to the Office. *See* Second PHEO at 2-4 (list of categories of essential businesses). The Second PHEO categorizes as essential businesses "[p]rofessional services, such as legal or accounting services, but only where necessary to assist in compliance with legally mandated activities." Second PHEO at 4. Although the term "professional services" has different definitions depending on the context, it is broadly understood to mean contracted-for services that require some form of licensing. *See, e.g.*, *Baker v. Hedstrom*, 2013-NMSC-043, ¶¶ 27-28, 309 P.3d 1047 (defining "professional services" as "services that must be provided by licensed individuals" under the Professional Corporation Act, NMSA 1978, §§ 53-6-1 to -14 (1963, as amended through 2001)); *Richter v. Presbyterian Healthcare Servs.*, 2014-NMCA-056, ¶¶ 22-25, 326 P.3d 50 (defining "professional services" as an act or service that requires the use or application of special learning for claims of ordinary negligence and medical malpractice). The Office does not provide professional services, but instead acts here as a quasi-judicial body to determine whether a person's license revocation should be upheld. *See Benavidez v. Bernalillo Cnty. Bd. of Cnty. Comm'rs*, 2021-NMCA-029, ¶ 18, 493 P.3d 1024 (defining quasi-judicial action as "involving a determination of the rights, duties, or obligations of specific individuals on the basis of the application of presently existing legal standards or policy considerations to past or present facts developed at a hearing conducted for the purpose of resolving the particular interests in question" (internal quotation marks and citation omitted)).

{19} Because the definition of "[b]usiness" in the First PHEO includes State departments and agencies like the Office, and the Office is not an essential business, we hold that the nonessential business closure applied to the Office. Therefore, the

Office and the AHO's decision to require a telephonic hearing during the closure was supported and authorized by Executive Order 2020-004 and the Second PHEO.

## II. Because the Public Health Emergency Orders Applied, the Office Was Required to Comply

**{20}** Petitioner argues that, even if the Second PHEO applied, the Office could still have held in-person hearings following the mass-gathering restrictions rather than effect a full closure. Petitioner also argues that reversal is warranted because the AHO acted as an advocate and beyond her scope as an impartial fact-finder when ordering a telephonic hearing. We disagree and explain.

**{21}** Our Supreme Court has held that all state and public officials "had a duty to comply with the Governor's pandemic-related executive orders" while the orders were in effect. *State ex rel. Riddle v. Oliver*, 2021-NMSC-018, ¶ 41, 487 P.3d 815; *see also* Executive Order 2020-004 at 3 ("All cabinets, departments, and agencies shall comply with the directives in this [o]rder and any instruction given by the Department of Health."). The Office was therefore required to comply with the Second PHEO's nonessential business closure while the order was in effect, which extended through Petitioner's hearing. The AHO's order clarified that the offices were closed on the date of Petitioner's hearing, stating that "all [the Office] locations were closed on the date of the hearing and [a]dministrative [l]aw [j]udges and all staff were tele[]working from home, according to the [Second PHEO]." Contrary to Petitioner's argument here, the Office could not continue conducting in-person hearings under the mass-gathering restrictions instead. Because the Office was required to close under the Second PHEO, the AHO did not act as an advocate, or otherwise act in a partial or biased way, when overruling the objection to a telephonic hearing.

## III. The AHO Did Not Improperly Represent Herself as a Judge or Rely on Our New Mexico Supreme Court's COVID-19 Orders When Deciding to Hold a Telephonic Hearing

**{22}** We also address Petitioner's argument that the AHO held herself out as a member of the judiciary. Petitioner asks this Court to hold that administrative hearing officers are not judges and may not hold themselves out as judges. Further, Petitioner argues the AHO improperly relied on our Supreme Court Order No. 20-8500-002 and Order No. 20-8500-006 when justifying holding a telephonic hearing because the Office is part of the executive branch, even though the Office performs a quasi-judicial function. Petitioner thus contends that the AHO misrepresented her authority and her decision to hold a telephonic hearing should be reversed. We find these arguments meritless and explain.

**{23}** Although the Office falls under the executive branch, administrative hearing officers may be considered judges. Under NMSA 1978, Section 7-1B-5(A) (2015), the chief hearing officer may promulgate rules pertaining to both the administrative hearings

and employees of the Office. The general administrative hearing and procedures rules define "hearing officer," in relevant part, as:

> The hearing officer may be a classified employee in the state personnel system with the administrative hearings office either as an attorney or *administrative law judge*, may be under contract with the administrative hearings office as a contract attorney, *administrative law judge*, or *judge*, or may be an attorney, *administrative law judge*, or *judge* serving in a voluntary capacity for the administrative hearings office.

22.600.1.7(G) NMAC (emphases added). The Implied Consent Act license revocation hearings rules contain an identical definition. *See* 22.600.6.7(F) NMAC. Contrary to Petitioner's contention that "the assertion by [the AHO] that she is a judge or administrative law judge is meritless and unsupported by law," classifying hearing officers as administrative law judges is authorized by the administrative code set out above. Consequently, we conclude the AHO did not improperly hold herself out as an administrative law judge.

**{24}**    After reviewing the AHO's order, we also conclude that the AHO did not improperly rely on our Supreme Court Order No. 20-8500-002 and Order No. 20-8500-006 when holding a telephonic hearing. Instead, the AHO's order here shows she relied on the Second PHEO and Standing Order. The AHO stated that "[the] Standing Order was issued requiring hearings to be scheduled telephonically to comply with the *March 23, 2020 stay-at-home order and nonessential business closure* issued by [*the*] *Governor . . . and Secretary of Health Kunkel*, which at the time of the hearing, were effective until April 30, 2020." (Emphases added.) The AHO further clarified that the hearing was telephonic because "all [the Office] locations were closed on the date of the hearing and [a]dministrative [l]aw [j]udges and all staff were tele[]working from home, *according to the* [*PHEO*] *and directives from the State Personnel Office*." (Emphasis added.) The AHO concluded with "[d]ue to the COVID-19 [p]ublic [h]ealth [e]mergency, the hearing was held telephonically" and made an additional finding that the Standing Order requiring telephonic hearings applied to the case.

**{25}**    The AHO's order references two Supreme Court orders—Order No. 20-8500-002 and Order No. 20-8500-006. *See* Order, *In re Precautionary Measures for Court Operations* No. 20-8500-002; Order, *In re Additional Precautionary Measures for Court Operations* No. 20-8500-006. Both orders are cited when the AHO cited the *Mathews v. Eldridge*, 424 U.S. 319 (1976), test in considering whether Petitioner's due process rights were violated. *See N.M. Dep't of Workforce Sols. v. Garduño*, 2016-NMSC-002, ¶ 11, 363 P.3d 1176 (stating that the *Mathews* test is the correct analytical framework for a due process analysis, and it involves weighing the factors of (1) the private interest affected, (2) the risk of erroneous deprivation of such interest through the procedures used, and (3) the state's interest). The AHO cited our Supreme Court and multiple executive and public health orders in her discussion of the State's interest in preventing the spread of COVID-19. The Court's orders were not cited as legal support for holding a telephonic hearing.

**{26}** Despite this, Petitioner asserts that "[a]lthough the [AHO] did not explicitly argue that her actions were within the scope of [our] Supreme Court's [o]rder, her references to herself as a judge and citation to the Supreme Court [o]rder imply that this [o]rder authorized the remote proceeding herein challenged." However, the record here does not reflect this. Citations to the Court orders, for an entirely separate purpose than to support a legal position, does not show that the AHO improperly relied on them. This is particularly true when the AHO gave detailed reasoning that she held a telephonic hearing because of the various public health emergency orders. Petitioner's argument that the AHO improperly blurred the lines between the executive and judicial branches here is baseless.

**{27}** We hold that the AHO's reference to herself as an administrative law judge and citations to our Supreme Court's COVID-19 orders, alone or combined, do not establish that the AHO exceeded her authority as a member of the executive branch.

### IV.    Petitioner Has Not Convinced Us That the Telephonic Hearing Was Otherwise Unauthorized

**{28}** Finally, we address Petitioner's contention that the telephonic hearing was otherwise improper. Petitioner argues that the Implied Consent Act, other enabling statutes, or our case law did not authorize the Office's decision to hold telephonic hearings. Petitioner also argues that the telephonic hearing prevented the AHO from making a proper credibility determination. For the reasons that follow, we are not persuaded.

**{29}** Petitioner relies on this Court's analysis from *Evans* for these arguments. In *Evans*, a license revocation hearing occurred by telephone and over the petitioner's objection. 1996-NMCA-080, ¶ 2. Upon review of the language of Section 66-8-112(B) and statutes that contained similar requirements, this Court held that the phrase "the hearing shall be held in the county in which the offense for which the person was arrested took place" means that a license revocation hearing must ordinarily be held in-person. *Evans*, 1996-NMCA-080, ¶¶ 3, 11, 13-14. Although sympathetic to the Department of Motor Vehicles' (DMV) argument, this Court held that the DMV ultimately acted without legislative authority. *Id.* ¶ 15.

**{30}** This Court's analysis in *Evans* focused on potential credibility concerns that can take place during a license revocation hearing. "In DMV license revocation proceedings, the credibility of the police officer and the driver is not infrequently at issue" because the hearing officer or fact-finder must make factual findings about the reasonableness of the traffic stop. *Id.* ¶ 8. This Court stated, "Traditionally, our legal system has depended upon personal contact between the fact[-]finder and the witness" and that "[e]xisiting case law confirms the importance of in-person hearings when critical credibility determinations are at stake." *Id.* ¶¶ 9-10. This Court concluded that "[i]n license revocations proceedings, the presence of the hearing officer may be necessary for the participants to have a sense of fair play—that the [DMV] has fairly considered the evidence, regardless of whether they agree with the result." *Id.* ¶ 12.

**{31}** Unlike here, the DMV in *Evans* "turned to telephonic hearings to conserve funds and in good faith spent money on equipment and personnel training." *Id.* ¶ 15. The DMV, in *Evans*, did not require telephonic hearings in response to other, legal orders entered to protect public health. Because of the conflict between credibility concerns and the DMV's justification in *Evans*, this Court concluded by stating, "[A] licensee may consent to a telephonic hearing. Absent legislative authority, we cannot ratify a procedure, however well-intentioned, that risks sacrificing accuracy for the sake of cost-effectiveness." *Id.* ¶ 15.

**{32}** Petitioner also argues that this Court has held the in-person hearing requirement is to be strictly enforced. In *New Mexico Taxation and Revenue Department v. Bargas*, the petitioner's license revocation hearing was scheduled 124 days after the notice of revocation because the petitioner's counsel requested two continuances. 2000-NMCA-103, ¶¶ 2-3, 129 N.M. 800, 14 P.3d 538. In the requests, counsel stipulated "that the hearing officer at any new hearing may make the statutorily-required finding that the hearing [had] been held within [ninety] days of the date of notice of revocation." *Id.* ¶ 3 (internal quotation marks omitted). The revocation hearing was continued once more with the agreement of the parties and then twice more over objections from the petitioner. *Id.* ¶¶ 3-7. The hearing ultimately took place 207 days after the notice of revocation, *see id.* ¶¶ 2, 6, and the hearing officer found "the hearing was held no later than ninety . . . days" after the notice of revocation, and "but for counsel's continuances, the hearing would have been held within the [ninety] days." *Id.* ¶ 7 (internal quotation marks omitted).

**{33}** This Court, in *Bargas*, agreed with the petitioner on appeal, and held that the plain language of Section 66-8-112(F) requires "the hearing to be held within ninety days from the notice of revocation." *Bargas*, 2000-NMCA-103, ¶ 16. Further, this Court held "that drivers may not waive the time limits of the [Implied Consent] Act." *Id.* ¶ 15. In conclusion, this Court acknowledged "that enforcing the rigid deadlines of the [Implied Consent] Act may pose difficulties for [DMV] and driver[s] alike," but "[g]iven the structure of the [Implied Consent] Act, however, we as a [C]ourt are bound and the solution, if one is required, lies with the [L]egislature." *Id.* ¶ 21.

**{34}** Petitioner asks that we hold *Evans* and *Bargas* control here because the Legislature did not enable the Office to exceed the statutory requirements discussed in those cases. We are not persuaded by Petitioner's argument. Although an in-person hearing is required under Section 66-8-112, such requirement conflicts with the Office's requirement to comply with the Second PHEO. In Executive Order 2020-004, the Governor invoked her power under PHERA. PHERA is intended in part to "provide the state of New Mexico with the ability to manage public health emergencies in a manner that protects civil rights and the liberties of individual persons." Section 12-10A-2(A). Under PHERA, "[t]he secretary of public safety, the secretary of health, the state director and, where appropriate, other affected state agencies . . . shall promulgate and implement rules that are reasonable and necessary to implement and effectuate [PHERA]." Section 12-10A-17; *see also Grisham v. Reeb*, 2021-NMSC-006, ¶ 26, 480

P.3d 852 (construing Section 12-10A-17, along with other provisions in the PHERA, as authorizing the executive branch to substantively respond to a public health crisis).

**{35}** As this Court previously recognized, "COVID-19 [was] a rapidly evolving public health crisis of an extraordinary magnitude." *State v. Alejandro M.*, 2021-NMCA-013, ¶ 8, 485 P.3d 787. By passing PHERA, the Legislature authorized the executive branch, including the Office, to take whatever steps "reasonable and necessary" to implement the Second PHEO during an unprecedented public health crisis of an extraordinary magnitude. *See Reeb*, 2021-NMSC-006, ¶ 26 (internal quotation marks and citation omitted).

**{36}** Although *Evans* held that Section 66-8-112(B)'s language required an in-person hearing, the holding was not issued during a public health emergency. *See Evans*, 1996-NMCA-080, ¶¶ 9-10. Executive Order 2020-004, the First PHEO, the Second PHEO, and the Standing Order—the constitutionality of which Petitioner does not challenge—authorized procedures employed in this case. Here, the Office was required to close. As a result, the chief hearing officer issued the Standing Order converting all license revocation hearings to telephonic hearings—an already established process for the Office in Implied Consent Act license revocation hearings. *See* 22.600.6.10 NMAC ("Time and Place of Implied Consent Act Hearing–Hearings In Person or by Telephonic, Videoconference, and Electronic Hearings"). The chief hearing officer stated, "This order attempts to balance the need to respond appropriately to the public health crises" with "the need to continue to conduct fair and impartial hearings that give participants an opportunity to be heard by applicable statutory deadlines." Standing Order at 2. Petitioner does not contend that the Standing Order was unauthorized by PHERA, does not develop any argument why the emergency orders at issue in this case should not prevail over Section 66-8-112(B), and does not advance any reasoned argument that the balance struck in the Standing Order failed to protect her interests.[1] We decline to make such arguments for Petitioner. *See State v. Flores*, 2015-NMCA-002, ¶ 17, 340 P.3d 622 ("This Court will not rule on an inadequately-briefed issue where doing so would require this Court to develop the arguments itself, effectively performing the parties' work for them." (internal quotation marks and citation omitted)).

**{37}** As for Petitioner's argument the telephonic hearing prevented the AHO from properly determining credibility, this is not borne out in the record. The AHO placed Officer Rodriguez under oath for his testimony, and Petitioner's counsel cross-examined Officer Rodriguez and objected to parts of his testimony. Petitioner also presented two separate arguments—challenging whether the initial traffic stop was supported by reasonable suspicion and whether the DWI arrest was supported by probable cause. Although the telephonic hearing prevented the AHO from viewing the witness's physical demeanor, the AHO found that this "did not unnecessarily or dangerously harm or

---

[1]To the extent Petitioner raises a due process argument in her brief in chief, it is undeveloped and lacks citation to authority. We, therefore decline to address it. *See State v. Candelaria*, 2019-NMCA-032, ¶ 48, 446 P.3d 1205 (declining to address an undeveloped claim); *see also State v. Guerra*, 2012-NMSC-014, ¶ 21, 278 P.3d 1031 (providing that appellate courts are under no obligation to review undeveloped arguments).

impede the fact-finding process." Petitioner does not challenge this finding and does not otherwise convince us that the AHO was unable to evaluate the officer's credibility in this case.

**CONCLUSION**

**{38}**    For the foregoing reasons, we hold that the nonessential business closure applied to State departments and agencies, including the Office. As a result, the Office was required to comply with the COVID-19 closure. Further, Petitioner has failed to convince us that the Office's decision to convert her license revocation hearing to a telephonic hearing during the COVID-19 closure was not otherwise in accordance with law. Therefore, we affirm.

**{39}    IT IS SO ORDERED.**

**JACQUELINE R. MEDINA, Judge**

**WE CONCUR:**

**JENNIFER L. ATTREP, Chief Judge**

**GERALD E. BACA, Judge**